adapted to be used in the deepening of harbors and channels, and it was actually engaged during petitioner's service in digging a channel or approach to a dock at which other vessels might land passengers or cargoes of freight. The dredge had within itself the means to propel itself from place to place upon the water, where only it could be used, and had also upon it accommodations for the crew. It was capable of being used as a means of transportation, and did actually transport machinery and a crew from Jersey City, N. J., to Rye, N. Y., as well as between other places. "It is for these reasons the court have held them [dredges] to be subject to admiralty jurisdiction and to the laws of navigation." The International, 83 Fed. 840.

The petitioner's duties as superintendent were to lay out and direct the work of the dredge, and to supervise the men. He was not the master of the vessel; simply a foreman in charge of the working crew. There was also upon the dredge an engineer who looked after the machinery, and a captain who had charge of the movements of the dredge when it was required to swing from place to place. When there was no work to be laid out for the dredge, and no supervision of the men necessary, the duties of the superintendent were suspended. He had no charge of the dredge when idle. In Re Minna, 11 Fed. 759, Judge Brown says: "All hands employed upon a vessel except the master are entitled to a lien if their services are in furtherance of the main object of the enterprise." To the same effect is the case of Laurence v. Flatboat, 84 Fed. 200; while in the case of McRae v. Bowers, 86 Fed. 344, the court goes still further, and holds that "the services of engineer, fireman, deckhands, and captain who work on board a dredging vessel * * * are required in the work in which the vessel is employed and have maritime liens for wages." For the services rendered as superintendent I am of the opinion the petitioner acquired a lien upon the dredge for his wages. Having, then, a lien upon the vessel, he is entitled to share in the proceeds of sale, and may apply by petition for the protection of his interests, under the forty-third rule of the supreme court in admiralty. The Unadilla, 73 Fed. 350; The Lottawanna, 21 Wall. 582.

The claimant is the owner of the vessel, which he purchased at public sale with notice of petitioner's claim. As between the claimant and the petitioner, the petitioner is entitled to preference in the distribution of the surplus fund in the registry of the court. Let a decree be prepared in accordance with these views.

---

THE FRANK VANDERKERCHEN.

(District Court, D. New Jersey. May 20, 1898.)

ADMIRALTY JURISDICTION—SUITS IN REM—STIPULATION WITHOUT SEIZURE.
    Where a libel in rem is filed against a vessel then within the jurisdiction, and, without issuance of monition or seizure of the vessel, the claimants voluntarily give a stipulation for value conditioned to perform and pay any decrees rendered, the court has jurisdiction to proceed with the cause just as if the vessel had first been seized, and a stipulation then given.

This was a libel in rem by Daniel S. Williams and others against the schooner Frank Vanderkerchen to recover damages resulting from a collision.

.Hyland & Zabriskie, for libelants.

Joseph Hill Brinton and J. Warren Coulston, for claimants.

KIRKPATRICK, District Judge.     The libel in this cause was filed January 26, 1894, by the owners of the schooner Maria Pierson, to recover damages, amounting to the sum of $2,000, resulting from a collision of the libelants' schooner with the schooner Frank Vanderkerchen, off the coast of New Jersey, January 8, 1894.     It is alleged in the verified libel that, at the time of its filing, the schooner Frank Vanderkerchen was lying in the waters of the Hudson river, within the district of New Jersey, and within the jurisdiction of this court. The agents of the owners of the schooner Frank Vanderkerchen, upon being notified of the filing of said libel, voluntarily entered into a stipulation with sureties, for value, in the sum of $2,000, by which it was agreed that, in case of default or contumacy on the part of the claimants or their sureties, execution for the amount of $2,000 might issue against their goods and chattels and lands.     It was also specifically set out in the said stipulation that the said schooner Frank Vanderkerchen had not then been attached, and that the value of $2,000 was fixed by consent of the sureties thereon indorsed, and the condition was that the said stipulators should abide by, and pay the money awarded by, the final decree in said cause.     In consequence of this stipulation being entered into, no monition issued against the schooner Frank Vanderkerchen, and she was not taken into custody. To the libel so filed a general appearance was entered, and an answer was filed on behalf of the schooner Frank Vanderkerchen.     Testimony was taken in said cause, hearing had, and final decree was entered April 13, 1897.     Subsequently, on May 5, 1897, Charles A. Pettit, for himself and others, claiming to be owners of the schooner Frank Vanderkerchen, filed a petition asking that all proceedings in relation to said schooner be dismissed, that the final decree be vacated, and that the stipulators be relieved from the obligation of their stipulation, upon the ground that the court had not acquired jurisdiction in the premises, because no actual seizure of the said schooner had ever been made, such seizure being necessary to the exercise of jurisdiction by the court.     A petition was also filed by said Pettit and others at the same time, praying that they might be allowed the benefit of the provisions of section 4284 of the Revised Statutes of the United States and its supplements, generally known as the "Limited Liability Act": but this latter petition was withdrawn subsequently in open court, so that the only question now to be decided by the court is one of jurisdiction.

It has been conceded that the schooner Frank Vanderkerchen was, at the time the libel was filed, within the territorial limits over which this court had jurisdiction; but it is contended that because no monition issued, because the schooner was not taken into actual custody, the court cannot exercise its authority over the vessel which is the

subject-matter of the suit. Actual, open, and notorious possession is necessary in actions in rem, so that all the world which may be interested in the suit can have due notice of the proceedings, and be given an opportunity to protect their rights, before the court should proceed to condemnation and sale. It is obvious, however, that the reason for this requirement applies only with regard to the thing itself of which the court proposes to dispose of the interest of all persons, whether they be represented before the court or not, but it fails entirely to be material when for the res there has been substituted a personal bond or stipulation to pay the damages awarded to the libelant. Then all the parties in interest are before the court, and there is no necessity for publicity. If a seizure has been made, upon the execution and delivery of the stipulation in sufficient amount to satisfy the libelant's claim, the res is surrendered to the claimant, and the stipulation is taken into the custody of the court, and thereafter becomes a substitute for the res, and to it alone the libelant thereafter looks for the satisfaction of his claim or decree. Jennings v. Carson, 4 Cranch, 25, 26; U. S. v. Ames, 99 U. S. 35. "The stipulators, to the extent of their stipulation, have been substituted for the steamer, and thus nothing but the value and the costs is within the custody of the court." The Webb, 14 Wall. 406. Ordinarily, seizure of the property precedes the appearance of the claimants in the suit; but it cannot make any material difference whether the claimants and their sureties voluntarily enter into the stipulation before actual seizure to avoid the expense and delay and inconvenience thereof, or whether they wait until the vessel has been taken into actual custody under the monition. The effect is the same so far as they are concerned. In the one case, the claimants are permitted to remain in possession of the vessel; in the other, it is redelivered to them. In both cases the stipulation becomes a substitute for the thing itself, and remains a pledge or security for the property as regards the claim of the libelants, and the "stipulators are held liable to the exercise of all those authorities on the part of the court which the tribunal could properly exercise if the thing itself were still in the custody of the court." The Wanata, 95 U. S. 611; The Palmyra, 12 Wheat. 1. "While the general rule requires an actual seizure and possession of the res by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for and represent the dominion of the court over the thing." Cooper v. Reynolds, 10 Wall. 317. It has been the practice in this district to make this substitution of stipulation for the res upon simple notice of filing the libel, and without monition being issued. Its legality has never before been questioned. The original object of the stipulation was to avoid the question of jurisdiction, and the agreement on the part of the stipulators to permit execution to issue against them in case of default, and abide and pay the amount awarded against them on final decree, was considered a waiver of all objection based on a failure to serve process. In Re The Roslyn, Fed. Cas. No. 12,068, his honor, Judge Brown, sitting in admiralty in the Southern district of New York, where the same practice prevails of accepting stipulation upon notice of filing libel and without issuing monition, held "that the fact that

the boat was not in custody would not render the stipulation void or prevent the court from enforcing it," and that such "stipulation was valid, though the vessel sought to be proceeded against is not and never was in custody." The rule to show cause will be discharged.

---

## THE KANSAS.

### BUTLER et al. v. THE KANSAS.

(District Court, D. Massachusetts. May 10, 1898.)

#### No. 876.

CARRIERS BY SEA—BILL OF LADING—LOSS OF GOODS.

In a bill of lading for old metal, a provision that if the goods be prevented, "by any cause," from going by the steamer specified, the carrier may forward them by the succeeding steamer of his line, warrants him in leaving them for the next vessel, which sails four days later, when the space reserved for the goods is needed for more perishable articles. And his failure to notify the shipper that they are so left does not make either him or the vessel liable for their loss in transit by a peril of the sea, though the shipper procures insurance on the goods only by the vessel specified, whereby he is unable to recover on the policy.

This was a libel in rem by Thomas Butler and others against the steamship Kansas to recover for the loss of goods shipped.

Henry M. Rogers, for libelants.
Ball & Tower, for respondent.

BROWN, District Judge. This is a libel in rem to establish a maritime lien upon the steamship Kansas for failure to deliver at Liverpool 32 barrels of old metal. The Kansas is one of the Warren Line of steamships (so called), running between Boston and Liverpool, and was advertised to sail, and did sail, from Boston, January 26, 1897. On January 23d a bill of lading was delivered to the libelants, the material parts whereof are as follows:

"Received, in apparent good order and condition, from Thomas Butler & Co., to be transported by the good British steamship Kansas, now lying in the port of Boston, and bound for Liverpool," etc., "* * * thirty-two barrels old metal, * * * to be delivered * * * at the port of Liverpool (or so near thereto as she may safely get) unto order, or to his or their assigns. It is mutually agreed that, in case the whole or any part of the goods specified herein be prevented by any cause from going in the said steamship, the carrier shall have liberty to forward them by succeeding steamship or steamships. * * * In witness whereof, the master or agent, on behalf of the owners of said ship, hath affirmed to two bills of lading, all of this tenor and date," etc.      "Warren & Co., Agents,
"Per A. J. Noether."

The bill of lading is indorsed, "[Signed] Thomas Butler & Co."
Warren & Co. were agents for a number of steamships, known as the "Warren Line." In this line, besides the Kansas, owned by the claimant, the Kansas Steamship Company, Limited, a British corporation, was the Angloman, a steamship owned by the British & North Atlantic Steam-Navigation Company. The Angloman sailed January 30, 1897, four days after the Kansas, and was the next suc-