UNITED STATES of America, Plaintiff,

v.

MARUNAKA MARU NO. 88, with its fishing gear, furniture, appurtenances, stores, fish, and cargo, Defendant.

No. A 81–330 Civil.

United States District Court,
D. Alaska.

March 31, 1983.

Michael R. Spaan, U.S. Atty., Gregory C. Taylor, Asst. U.S. Atty., Anchorage, Alaska, for plaintiff.

Richard J. Riordan, Jr., Bradbury, Bliss & Riordan, Inc., Anchorage, Alaska, for defendant.

## OPINION

FITZGERALD, District Judge.

The MARUNAKA MARU NO. 88, a Japanese high seas gill-netter, was sighted by the Coast Guard on June 10, 1981 approximately 49 miles south of Kiska Island within the Fishery Conservation Zone. On June 11, 1981, the MARUNAKA MARU was boarded and seized by the Coast Guard for alleged violations of the Fishery Conservation and Management Act of 1976 (FMCA).[1] After being seized, the vessel was brought to Kodiak, Alaska where custody was transferred to the Coast Guard Support Center.

According to the government's complaint, when first sighted, the MARUNAKA MARU's gillnets were aboard the vessel and fish were observed in the nets. The Coast Guard cutter CONFIDENCE attempted to stop and board the MARUNAKA MARU for inspection under provisions of the FCMA. Efforts were made to communicate with the vessel by various means including radio, flag hoist, semaphore, flashing lights, loud hailer and finally warning shots fired across the bow. Despite these efforts, the MARUNAKA MARU refused to stop and for over 19 hours the Coast Guard maintained close pursuit. The government claims that, during the chase, the MARUNAKA MARU maneuvered to ram the CONFIDENCE, posing a serious safety threat to the officers and crew aboard the cutter. Finally, the CONFIDENCE, with the aid of Japanese patrol boats, succeeded in stopping and boarding the MARUNAKA MARU.

Once aboard the vessel, the Coast Guard conducted a search and discovered that the MARUNAKA MARU did not possess a fishing permit required by the FCMA. The government also contends the search re-

---

1. 16 U.S.C. §§ 1801–1882 (Supp.1982).

vealed that fish aboard the vessel had been caught or processed unlawfully within the Fishery Conservation Zone, a 197 mile wide economic zone extensively regulated under the provisions of the FCMA. In addition, the Coast Guard learned that officers of the MARUNAKA MARU had failed to maintain the required daily cumulative catch log and that the vessel's international radio call sign had been deliberately concealed under tarpaulins.

On June 30, 1981, the United States attorney filed a complaint in this court for forfeiture of the vessel and its catch. Attached to the government's pleadings was a warrant of arrest to be issued by the clerk of court. The clerk, however, relying upon the decision in *Alyeska Pipeline Service Co. v. The Vessel BAY RIDGE,* 509 F.Supp. 1115 (D.Ak.1980) *appeal docketed,* Nos. 81–3229, 3249 (9th Cir.1981),[2] declined to issue process without a pre-arrest hearing. Apparently the clerk was unaware that *THE BAY RIDGE* expressly approved an earlier decision, *United States v. KAIYO MARU NO. 53,* 503 F.Supp. 1075 (D.Ak.1980), *aff'd* 699 F.2d 989 (9th Cir.1983), holding that a Coast Guard seizure authorized under the FCMA obviated the constitutional necessity for a pre-arrest hearing. In any event, no legal process initiating *in rem* proceedings in this court was issued by the clerk despite the government's request.

Soon after the complaint was filed, attorneys for claimant, Osaka Gyogyo K.K., owner of the vessel, entered a restricted appearance under Supplemental Rule E(8), Fed.R.Civ.P., and applied for a hearing to set bond and have the vessel and her catch released from official custody.[3]

The hearing was promptly scheduled before U.S. Magistrate Peter Aschenbrenner. Before the hearing, claimant's attorney and the assistant U.S. attorney reached an agreement that the vessel could be released once claimant filed a special release bond. The attorneys were unable to agree on terms for release of the catch.[4]

After taking evidence, the magistrate fixed the value of the catch at $87,000. He then authorized the U.S. marshal to release the vessel and its catch as soon as the claimant filed bonds and security of $150,000 for the vessel and $87,000 for the catch.[5] On July 2, 1981 the claimant provided $237,000 in certificates of deposit to the clerk of court together with a special release bond. The vessel and its catch were then released from custody and the vessel returned to Japan.

The MARUNAKA MARU has filed a Rule 12(b) motion to dismiss the *in rem* proceeding stating that the court failed to obtain jurisdiction over the vessel. The claim is made that the vessel was never properly arrested by process under Rules C

**2.** In *THE BAY RIDGE,* this court held that Rule C(3), Fed.R.Civ.P. (Supplemental Rules for Certain Admiralty and Maritime Claims) was unconstitutional for failing to provide pre-arrest notice and hearing.

**3.** The attorneys entered a restricted appearance on behalf of Osaka Gyogyo K.K. pursuant to Rule E(8) for the purpose of defending the United States of America's claim for forfeiture of the MARUNAKA MARU NO. 88. The appearance was not to constitute an appearance for the purpose of any other claim to which process "is not available or has not been served." Any and all pleadings, except for service of process, were to be served on counsel. The appearance was entered on the 30th day of June, 1981.

**4.** At the hearing, counsel for the government stated:

Thank you, Your Honor, The parties have stipulated that the value of the bond for the vessel will be $150,000, a special performance bond under the usual conditions, that we have seen in this District. Both parties are aware of that, upon the claimant making the required payment the appropriate documents will be presented to the court.

The only issue then, Your Honor, essentially is what will the court do with the catch, that is the approximately twenty-four tons of salt salmon aboard the vessel. (R.T.3)

**5.** At the hearing, the magistrate ruled:

As long as you are going to post it, that's fine. Upon the posting, also I am going to order, and it will be the easiest thing, upon the posting of the bond in the amount of $237,000, $150,000 for the ship and $87,000 for the catch, the marshal is authorized to release the boat and the catch to the owner of the boat. (R.T.29)

and E, Fed.R.Civ.P. (Supplemental Rules for Certain Admiralty and Maritime Claims), and that she is now outside of the court's jurisdiction and likely to remain so.

■ It is well established that before an *in rem* proceeding can be maintained against a vessel, the vessel must be within the territorial confines of the court's jurisdiction. *American Bank of Wage Claims v. Registry of District Court of Guam,* 431 F.2d 1215, 1218 (9th Cir.1970). In the usual course, jurisdiction is obtained by serving a warrant of arrest pursuant to Supplemental Rule C(3). Rule C(3), Fed.R.Civ.P. (Supplemental Rules for Certain Admiralty and Maritime Claims); *accord, United States v. KAIYO MARU NO. 53,* 699 F.2d at 998, 999 (9th Cir.1983).[6] These requirements reflect the firmly established admiralty fiction that the vessel has an independent identity and must be brought before the court with process. *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 22–23, 80 S.Ct. 1470, 1472–73, 4 L.Ed.2d 1540 (1960).[7]

■ A party may, however, by appropriate conduct waive strict adherence to the formal requirements necessary to establish *in rem* jurisdiction. Traditionally, admiralty courts have allowed stipulations for value, general and special bonds, and letters of undertaking to serve as a substitute for the vessel.[8] In effect, a claimant who executes a bond or stipulation for example, consents to the court's *in rem* jurisdiction even

though the vessel is subsequently released from the marshal's custody.[9] Furthermore, jurisdiction may attach even though the vessel is not actually brought into the custody of the U.S. marshal under court process:

> Ordinarily, seizure of the property precedes the appearance of the claimants in the suit; but it cannot make any material difference whether the claimants and their sureties voluntarily enter into the stipulation before actual seizure to avoid the expense and delay and inconvenience thereof, or whether they wait until the vessel has been taken into actual custody under the monition. The effect is the same so far as they are concerned. In the one case, the claimants are permitted to remain in possession of the vessel; in the other it is redelivered to them.... The original object of the stipulation was to avoid the question of jurisdiction, and the agreement on the part of the stipulators to permit execution to issue against them in case of default, and abide and pay the amount awarded against them on final decree, was considered a waiver of all objection based on failure to serve process.

*THE FRANK VANDERKERCHEN,* 87 F. 763, 765 (D.N.J.1898).[10]

Congress has expressly authorized release of the vessel and its catch from custody pending *in rem* forfeiture proceedings under the FCMA:

> the arrest or procure the release of the vessel, *is substituted for and stands as the vessel in the custody of the court.");* See generally, Harmon, *Discharge & Waiver of Maritime Liens,* 47 Tul.L.Rev. 786 (1973).

**6.** In *THE KAIYO MARU,* the court of appeals noted that once the Coast Guard seized a vessel under the FCMA, the vessel was effectively in the custody of the government. Though issuing process against the seized vessel amounted to no more than a "formality," it is nonetheless a formality necessary to establish jurisdiction *in rem. Id.* at 999.

**7.** This fiction is not without controversy:
It has been referred to as "archaic," "an animistic survival from remote times," "irrational" and "atavistic."
364 U.S. at 23, 80 S.Ct. at 1473. Despite this strong critique, the essential vitality of the fiction has persevered. *Id.* at 35, 80 S.Ct. at 1479. (Whittaker, J., dissenting).

**8.** *Continental Grain Co. v. Barge FBL–585,* 364 U.S. at 38, 80 S.Ct. at 1481 (Whittaker, J., dissenting) ("This Court has from an early day consistently held that a bond, given to prevent

**9.** *Id.*

**10.** *See also, Treasure Salvors v. Unidentified Wrecked and Abandoned Sailing Vessel,* 569 F.2d 330, 335 (5th Cir.1978); *Reed v. S.S. YAKA,* 307 F.2d 203, 204 (3rd Cir.1962), *rev'd on other grounds,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); *Martin v. THE BUD,* 172 F.2d 295, 296 (9th Cir.1949); *Hooper v. Kunkler,* 1 F.2d 846, 847 (9th Cir.1924); *THE WILLAMETTE,* 70 F. 874 (9th Cir.1895); *Munks v. Jackson,* 66 F. 571, 573 (9th Cir. 1895).

Any officer authorized to serve any process *in rem* which is issued by a court having jurisdiction under Section 1861(d) of this title shall—

(A) stay the execution of such process; or

(B) discharge any fish seized pursuant to such process;

upon the receipt of a satisfactory bond or other security from any person claiming such property. Such bond or other security shall be conditioned upon such person (i) delivering such property to the appropriate court upon order thereof, without any impairment of its value, or (ii) paying the monetary value of such property pursuant to an order of such court.

16 U.S.C. § 1860(d). This provision of law was enacted for the benefit of "any person claiming" the seized property. The claimant can obtain the interim release of the vessel while the parties subsequently litigate fully the merits of the forfeiture proceedings. The claimant is thereby spared both the costs associated with custody as well as economic loss caused by detention of a vessel which otherwise could be gainfully utilized. There is no other way to obtain the interim release of a seized vessel subject to forfeiture. *Compare,* Rule E(5)(a), Fed. R.Civ.P. (Supplemental Rules for Certain Admiralty and Maritime Claims) (Rule E(5) inapplicable in cases of seizures for forfeiture under any law of the United States).

Under section 1860(d), once a vessel has been seized, a claimant who so desires may obtain release of the vessel from custody by posting a satisfactory bond or other security. The claimant's right to invoke section 1860(d) exists regardless of whether formal process has issued against the vessel. The sole condition imposed under the act is that claimant, in addition to posting security, must promise to obey a future order of the court directing claimant either to redeliver to the court the released vessel without any impairment of its value, or to pay its monetary value.

By requesting that the court exercise jurisdiction under the act to order the property released, and by specifically promising to abide by future orders of the court affecting that property, claimant expressly consents to the court's continuing *in rem* jurisdiction over the released property. Otherwise, release of the *res* would divest the court of jurisdiction to proceed. It is of no consequence that the vessel had not been formally arrested by judicial process before being released because that fact in no way inhibited claimant's statutory right to secure the vessel's release. Claimant is permitted by law, once the vessel is seized, to ask the court to return the seized property; but claimant must first consent to the court's exercise of jurisdiction over the seized property after its release. Since claimant can pursue the seized vessel's release either before or after the vessel is arrested by process, it follows that claimant's submission to the court's future jurisdiction is unaffected by whether or not vessel was arrested prior to its release.

In his papers and in the hearing before the magistrate, claimant's attorney urged the court to exercise the jurisdiction conferred by statute to fix the amount of security and to order the release of the vessel and its catch from official custody. Claimant successfully obtained the magistrate's order conditioned upon the filing of an appropriate bond and security in the amount of $237,000.

On July 2, 1981 claimant deposited $237,000 and a bond meeting the statutory requirements with the clerk of court. The bond by its terms provided for release of the vessel from custody of the U.S. marshal, and the MARUNAKA MARU was permitted to leave United States waters and return to Japan. The terms of the bond also provided that claimant would surrender the vessel at any port in Southcentral Alaska or at Kodiak on any date and time required by the court. Significantly, the bond expressly stated that the vessel "shall remain subject to the court's jurisdiction during the pendency of this proceeding." [11]

---

11. The bond in relevant part provided:

Now, therefore, if the above bounden principal shall agree that the vessel shall remain

■ Claimant does not dispute that under normal circumstances the bond submitted in this case would effectively waive a jurisdictional defense based on defective process. The claimant suggests, however, that despite section 1860(d) process was not waived since at the time claimant's counsel appeared before the magistrate, and later when the bond and security were offered, counsel was under the mistaken belief that the vessel had been lawfully arrested. Claimant concludes that the bond, offered solely on the erroneous impression that the vessel had been properly arrested, cannot supply valid consent. This proposition finds slight support in *THE BERKELEY,* 58 F. 920 (E.D.S.C.1893).

In *THE BERKELEY,* the clerk of court mistakenly issued an arrest warrant in an action to foreclose a maritime lien where the warrant could be lawfully authorized only by order of a judge. Since the warrant had been improperly issued, the arrest of the vessel was invalid. After the arrest, the vessel was released upon a stipulation. The court reasoned that since the stipulation was offered solely on the erroneous impression that valid process had issued, the stipulation was void and *in rem* jurisdiction did not attach.

The facts in *THE BERKELEY* are quite different from the case now under consideration. Unlike the BERKELEY, which had remained free until unlawfully arrested, the MARUNAKA MARU had been boarded, searched and seized by the Coast Guard for fishing violations following an extended chase on the high seas. She was held in official custody at Kodiak, Alaska. It was the Coast Guard seizure, not the false impression that the vessel had been "arrest-

ed," that prompted claimant to appear and pursue the vessel's release. Moreover, the record reveals that at the hearing before the magistrate, claimant's counsel was aware that the vessel, although seized by the Coast Guard, had not yet been arrested under process issued by the court.[12]

■ Claimant also contends that the bond and the security are not enforceable since claimant's counsel entered a restricted appearance under Supplemental Rule E(8). Claimant's counsel filed a document with the court restricting his appearance only to claims for which process had issued. Since no process had issued against the vessel in this case, claimant concludes that any action undertaken, including the posting of a bond consenting to the court's continuing exercise of *in rem* jurisdiction, is of no effect and cannot confer *in rem* jurisdiction herein. Claimant inaccurately states the consequences which flow from entering a restricted appearance.

Application of Rule E(8) is limited to situations where process has already issued against the *res.* Once a claimant appears and defends against an *in rem* claim for which process has issued, Rule E(8), when properly invoked, precludes claimant's restricted appearance from being deemed a general appearance on other claims, properly joinable, for which process has not yet issued. *See,* Advisory Committee Notes, Rule E (Supplemental Rules for Certain Admiralty and Maritime Claims). Claimants may appear under Rule E(8) without submitting themselves to general *in personam* liability beyond the value of their interest in the *res. Cobb Coin Co., Inc. v. Unidentified, Wrecked, and Abandoned Sailing Vessel,* 549 F.Supp. 540, 555 n. 14 (S.D.Flor-

---

subject to the court's jurisdiction during the pendency of this proceeding;

AND, the vessel shall be released from the custody of the United States Marshal and shall be permitted to leave United States waters and return to Japan;

AND, the vessel shall be surrendered by claimant at any port in southcentral Alaska or at Kodiak at any date and time designated by the court, taking into consideration the distance to be traveled by the vessel at the time of the order by the court.

12. At the hearing, claimant's counsel stated: That's right. As far as I know it hadn't actually been arrested but the government has asked that a warrant be issued to arrest it, but this is the practice that has been prevailing, although here the owner's concern, they had the boat eighteen days without doing anything about it, so there has always been that economic burden on the owner. (R.T.6)

ida 1982); *see also, Burgess v. M/V TAMA-NO,* 564 F.2d 964, 983 (1st Cir.1977) *cert. denied,* 435 U.S. 941, 98 S.Ct. 1520, 55 L.Ed.2d 537 (1978). A restricted appearance does not preserve jurisdictional defenses to the original claims that prompted claimant's appearance. Such defenses are properly raised by motion or responsive pleading. Rule 12(h), Fed.R.Civ.P. In this case, claimant consented to the court's *in rem* jurisdiction and cured the defective process before filing the motion under Rule 12.

I conclude the magistrate had jurisdiction to order the release of the MARU-NAKA MARU under the provisions of 16 U.S.C. § 1860(d). The statute provides that upon receipt of a bond or other security a vessel and its catch may be released. The statute provides a means whereby the vessel can be released either before or after process has actually issued. By proceeding under section 1860(d), claimant submitted to the court's continuing jurisdiction *in rem.* Claimant's motion to dismiss for want of jurisdiction is DENIED.