**GULF OF MAINE TRAWLERS and Zenon Gogola, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**TERESA MARIE, INC., and James A. Odlin, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**The PROCEEDS FROM the SALE OF 30,840 POUNDS OF FISH, TO WIT: $11,089.15, Defendant.**

Civ. Nos. 86–0264P, 86–0266P and 87–0125P.

United States District Court, D. Maine.

Nov. 30, 1987.

constituted an unreasonable search and seizure, violated the Magnuson Act, and did not afford them adequate due process.[1] The United States subsequently filed a forfeiture action in this Court on April 29, 1987, seeking the proceeds from the sale of the fish in the hold of the F/V Jessica and Lisa. A separate forfeiture action has been filed in the District Court of Massachusetts for the proceeds from the sale of fish from the hold of the F/V Teresa Marie. In the forfeiture action before this Court, the owners of the F/V Jessica & Lisa have opposed the Government and alleged various affirmative defenses relating back to their constitutional claims filed earlier in this Court. They have also challenged the jurisdiction of this Court to hear the *in rem* forfeiture proceeding, arguing that the sale of the fish eliminated the *res* on which jurisdiction is based.

Martin R. Johnson, Donna M. Katsiaficas, Portland, Me., for plaintiffs.

Richard S. Cohen, David R. Collins, Portland, Me., Charles R. Julliand, Gloucester, Mass., for defendant.

GENE CARTER, District Judge.

## MEMORANDUM OF DECISION AND ORDER

These related actions arise from the seizure of the catch of two fishing vessels for violations of the Magnuson Fishery Conservation and Management Act, 16 U.S.C. § 1801 *et seq.* (Magnuson Act). Gulf of Maine Trawlers, Inc., and Zenon Gogola, plaintiffs, are the owners of the F/V Jessica & Lisa. Teresa Marie, Inc., and James Odlin, plaintiffs, are the owners of the F/V Teresa Marie. On August 27, 1986, Plaintiffs filed separate, though substantially similar, complaints against the United States alleging that the Government's seizure and subsequent sale of their cargo

## I.

The Magnuson Act established a Fishery Conservation Zone (FCZ)[2] in the waters off the United States coastline. The FCZ runs from the outer limits of state waters to 200 nautical miles. 16 U.S.C. § 1811. All fish except highly migratory species are subject to the exclusive fishery management authority of the United States, which authority is administered by the Secretary of Commerce. 16 U.S.C. §§ 1812, 1813. The Secretary promulgates regulations necessary to carry out management plans for each of the FCZ's eight regions. 16 U.S.C. § 1855(c).

The F/V Jessica & Lisa was boarded by agents of the National Marine Fisheries Service on July 1, 1986. The vessel was within FCZ waters and was found to be using a net mesh size that did not conform to regulations prescribed for the portion of the Gulf of Maine and George's Bank known as the large-mesh area, 50 C.F.R.

---

1. Plaintiffs Gulf of Maine Trawlers and Mr. Gogola filed their original complaint on August 27, 1986. Plaintiffs Teresa Marie, Inc., and Mr. Odlin filed their complaint on the same day, August 27, 1986. The complaints are identical except for specific factual assertions particular to each case, set forth in paragraphs 7 and 9 of both papers.

2. On November 14, 1986, the FCZ was renamed the Exclusive Economic Zone, Pub.L. 99–659.

§ 651.20(a).[3] The vessel also contained undersized Atlantic Cod and Haddock, in violation of 50 C.F.R. §§ 651.7(d), 651.23(a)(1).[4]

The F/V Teresa Marie was boarded on July 22, 1986, by Coast Guard personnel. The vessel was within the large-mesh area of FCZ waters. Although its trawl net at the cod end had a legal mesh size of 5.79 inches, the vessel was found to be using a cod net liner that diminished the mesh size to 4.75 inches in the cod end, thereby violating 50 C.F.R. § 651.20(d)(2).

After these violations were found, the catches were seized and the vessels unloaded at respective ports in Maine and Massachusetts.[5] The fish were sold and the proceeds deposited in a suspense account with the National Oceanic and Atmospheric Administration (NOAA), pending administrative or judicial proceeding. 15 C.F.R. § 904.505(a), (d).[6]

Plaintiffs filed Standard Form 95's (Claim for Damage, Injury, or Death) with the National Marine Fisheries Service, Enforcement Division in Portland, on August 27, 1986, and filed complaints against the United States on August 29. NOAA sent notices of violation and penalty to Plaintiffs on October 9, 1986.[7] Plaintiffs requested an administrative hearing on November 5, 1986, and consented to a delay of the Government's filing of forfeiture proceedings pending conclusion of the related administrative civil penalty proceedings. A hearing was scheduled for April 6, 1987, but both Plaintiffs reached a settlement agreement in April that obviated the need for such a hearing. By that agreement, Plaintiffs stipulated to the facts constituting the FCMA violations and agreed to pay civil penalties.[8] The United States filed a forfeiture action against the owners of the F/V Jessica & Lisa on April 28, 1987. By order dated April 30, the Court approved the sale of the fish, the terms of the sale, and ordered the proceeds deposited with the Court pending disposition of the action. The proceeds from the catch were so deposited on May 6, 1987.

## II.

■ Plaintiffs moved for summary judgment on their complaint against the Government on February 18, 1987. The

---

3. Regulations required that fishing vessels in that area use a trawl net not less than five and one-half inches in the cod end (the end of the net in which the catch is retained), 50 C.F.R. § 651.20(b), unless the vessel is certified in an exempted fisheries program. 50 C.F.R. § 651.22. The F/V Jessica & Lisa was not enrolled in the exempted fisheries program for that area, the Optional Settlement Program, and the mesh size of its cod end was measured at 4.456 inches.

4. Under the Secretary's regulations for Atlantic groundfish, it is unlawful for any person in a commercial fishing vessel to possess any multispecies groundfish, including cod and haddock, smaller than 17 inches within the regulated FCZ. 50 C.F.R. §§ 651.7(d), 651.23(a)(1). Agents observed what appeared to be several undersized species of groundfish on top of the catch in the vessel's hold. When measured, at least ten cod were undersized. During offloading at Maine Fisheries, fifty-three Atlantic cod and fifty-five Haddock less than 16½ inches in length were separated from the catch.

5. The F/V Teresa Marie was docked at John Wright Fish Company in Gloucester, Mass., and the seized catch was sold for the net domestic fair market value of $5,022. The F/V Jessica & Lisa was docked and unloaded at Maine Fisheries, where the legal catch was sold the market value of $11,089.15, and the undersized catch given to Southern Maine Vocational Institute and a local farmer for feed.

6. The regulations provide that, in view of the perishable nature of fish seized under the statute, the fish may be sold for the domestic fair market value and the proceeds deposited in a NOAA suspense account or submitted to the appropriate court pending disposition of forfeiture proceedings. 15 C.F.R. § 904.505(a), (d).

7. NOAA mailed a Notice of Seizure and Sale and Waiver of Immediate Forfeiture and Consent to Delay, and a Notice of Violation and Assessment of Administrative Penalty assessing civil penalties for the specific violations, to both Plaintiffs via counsel on October 9, 1986.

8. Plaintiffs Teresa Marie, Inc., and James Odlin reached a settlement agreement on April 2, 1987, agreeing to pay $3,750 in civil penalties, but reserving the right to pursue their claim to the proceeds from the sale of the fish in district court. Plaintiffs Gulf of Maine Trawlers, Inc., and Zenon Gogla reached agreement on April 14, 1986, finalized on April 23, 1987, agreeing to pay $7,500 in civil penalties, but also reserving their right to pursue their claims to the proceeds of the fish.

Government answered that motion with its own summary judgment motion on May 27, 1987. This Court's jurisdiction over those motions is conferred by 28 U.S.C. §§ 1331, 2201, and 2202, and also by the exclusive jurisdiction provision in the Magnuson Act, 16 U.S.C. § 1861(d).[9] Exclusive jurisdiction over the Government's forfeiture action is also conferred by the FCMA, 16 U.S.C. §§ 1860(b), 1861(d).[10]

The parties have since stipulated to a trial record and have agreed to the matter being resolved on the merits by the Court, rather than leaving it in the posture of proceeding on cross-motions for summary judgment. *See Boston Five Cents Savings Bank v. Secretary of Department of Housing and Urban Development*, 768 F.2d 5, 11–12 (1st Cir.1985). Oral argument was heard on November 26, 1987.

Plaintiffs challenge the jurisdiction of this Court to hear the forfeiture action, arguing that the sale of the fish without court order constituted a release of the *res* and thereby precludes this Court's taking *in rem* jurisdiction. Under the Secretary's regulations, a court has *in rem* jurisdiction over the proceeds of the sale in the same manner as it would over the original catch itself. 15 C.F.R. § 904.505(d).[11] The proceeds from the initial sale are to be deposited in a NOAA suspense account or submitted to the appropriate court once forfeiture proceedings are initiated. *Id.* This

was the procedure followed in the present case.

To support their position that the regulations deprive the Court of *in rem* jurisdiction, Plaintiffs cite *dictum* from a passage in *United States v. Marunaka Maru No. 88*, 559 F.Supp. 1365 (D.Alaska 1983), in which the court stated that "release of the *res* would divest the court of jurisdiction to proceed." *Id.* at 1369. That court was discussing whether or not a court would be deprived of *in rem* jurisdiction when a vessel was released on bond to its owner prior to its having been formally arrested by judicial process. In that case, no warrant of arrest had been issued at the time the vessel was released on bond, and the defendants had argued that its release constituted a release of the *res* and precluded that court's taking *in rem* jurisdiction in the later forfeiture action for the vessel. *See* Fed.R.Civ.P. Rule C(3) (Supplemental Rules for Certain Admiralty and Maritime Claims); *accord, United States v. Kaiyo Maru No. 53*, 699 F.2d 989, 998–999 (9th Cir.1983). The court in *Marunaka Maru* held that a claimant expressly consents to a court's continuing *in rem* jurisdiction when he requests the court to exercise jurisdiction under the act to order the vessel released on bond, and that consent is unaffected by whether the vessel is formerly arrested by judicial process at the time the bond is issued.[12]

9. Section 1861(d) reads in pertinent part:
   The district courts of the United States shall have exclusive jurisdiction over any case or controversy arising under the provisions of this chapter.... Any such courts may, at any time—
   (1) enter restraining orders or prohibitions;
   (2) issue warrants, process in rem, or other process;
   (3) prescribe and accept satisfactory bonds or other security; and
   (4) take such other actions as are in the interest of justice.

10. Section 1860(b) provides that
    [A]ny district court of the United States which has jurisdiction under section 1861(d) of this title shall have jurisdiction, upon application by the Attorney General on behalf of the United States, to order any forfeiture authorized under subsection (a) of this section and any action provided for under subsection (d) of this section.

11. Section 904.505(d) reads:
    The proceeds of the sale, after deducting any reasonable costs of the sale, will be subject to any administrative or judicial proceedings in the same manner as the seized fish would have been, including an action in rem for the forfeiture of the proceeds. Pending disposition of such proceedings, the proceeds will, as appropriate, either be deposited in a NOAA suspense account or submitted to the appropriate court. The proceeds will not be subject to release under §§ 904.502 or 904.506(f) of this subpart.

12. The passage from which Plaintiffs cite their supportive dictum reads in pertinent part as follows:
    By requesting that the court exercise jurisdiction under the act to order the property released, and by specifically promising to abide by future orders of the court affecting that property, claimant expressly consents to the

In the present case, the issue of consent has not been raised. Since there had been no arrest by judicial process at the time of sale, and no court order for the sale itself, Plaintiffs argue that the Court did not have proper jurisdiction over the *res* at the time of its release and, therefore, the sale of the fish was an unconditional release of the *res* preventing this Court from later taking *in rem* jurisdiction over the fish in the Government's forfeiture action. Essentially, Plaintiffs' position would require court approval prior to the sale of the fish, a requirement they also argue is implicit in the Magnuson Act itself.[13]

Plaintiffs' argument does not give adequate weight to the explicit wording of the Magnuson Act itself. The Act specifically provides for district court jurisdiction over the "fish (or fair market value thereof)" in civil forfeiture actions. 16 U.S.C. § 1860(a), (b). The phrase "or the fair market value thereof" was added by amendment in 1983,[14] and was intended to allow the Secretary, through implemented regulations, to

> seize the fair market value of fish on board a fishing vessel which has been found to have violated the provisions of section 307 of the Act. This change has been made due to the fact that the current provision allowing only the seizure of the fish itself is often impossible to accomplish in timely fashion; thus the fish have no real value.

H.R.Rep. No. 97–549, 97th Cong., 2d Sess. 32, *reprinted in* 1982 U.S.Code Cong. & Admin.News 4320, 4345.

Unlike the case in *Marunaka Maru*, no implied consent need be found for this Court's *in rem* jurisdiction in the present forfeiture action. The amended language in section 1860(a) provides for *in rem* jurisdiction over both the fish and their fair market value. It follows that both the fish and the proceeds of their sale are adequate *res* over which the Court may exercise jurisdiction, and that—for jurisdictional purposes—a warrant or other judicial process need not have been issued by this Court prior to the seizure of the proceeds by authorized officials under the act. *See* 16 U.S.C. § 1861(b)(1)(A)(iv). On April 30, 1987, this Court approved the sale of the fish, the terms of the sale, and ordered the proceeds deposited with the Court pending disposition of the action. The proceeds were deposited on May 6. The Court therefore has *in rem* jurisdiction of this forfeiture action.

### III.

Plaintiffs have alleged various violations of their due process rights arising from the Government's search and seizure of the catch from their vessels. Specifically, Plaintiffs' complaint states that the sale of the fish without a prior court order constituted an unreasonable search and seizure in violation of the Fourth Amendment; that the Magnuson Act requires prior court approval for the sale of seized catch; and that Plaintiffs were deprived of other due process safeguards such as notice, hearing, and the right to post bond.

■ The Court finds as a threshold matter that the initial search of the vessels and subsequent seizure of the fish were reasonable and proper. The Magnuson Act provides for warrantless searches of vessels

court's continuing *in rem* jurisdiction over the released property. Otherwise, release of the *res* would divest the court of jurisdiction to proceed. It is of no consequence that the vessel had not been formally arrested by judicial process before being released because that fact in no way inhibited claimant's statutory right to secure the vessel's release. *Marunaka Maru No. 88,* 559 F.Supp. at 1369.

**13.** The FCMA provides for court approval of the sale, 16 U.S.C. § 1860(d)(2) ("Any fish seized pursuant to this chapter may be sold, subject to the approval and direction of the appropriate court, for not less than the fair market value

thereof"), and the implemented regulations provide for subsequent court review of both the terms of sale and the propriety of the initial seizure. 15 C.R.F. § 940.505(d) (proceeds of sale are "subject to administrative or judicial proceedings in the same manner as the seized fish would have been ..."). The Court will address below Plaintiffs' argument that the Act requires prior court approval for the sale of seized fish.

**14.** H.R.Rep. No. 97–549, 97th Cong. 2nd Sess. 32 (1982), Pub.L. 97–453.

reasonably believed to be in violation of provisions of the Act and for the seizure of fish therein, 16 U.S.C. § 1861(b)(1)(A), and the reasonableness of these warrantless searches has been expressly upheld in prior cases. *See Lovgren v. Byrne*, 787 F.2d 857, 865 (3rd Cir.1986) ("... the Magnuson Act and regulations do not invite unnecessary intrusion on privacy."); *United States v. Kaiyo Maru No. 53*, 699 F.2d 989, 995 (9th Cir.1983) ("... warrantless inspections authorized by the Magnuson Act do not offend the fourth amendment.").

Plaintiffs argue that implemented regulations allowing for the sale of seized fish without prior court approval are in conflict with the Magnuson Act, the Supplementary Rules for Certain Admiralty and Maritime Claims, and with the customs statutes. Each of these alleged conflicts will be considered separately.

Under the regulations implemented by the Secretary in April, 1985, fish seized under the Magnuson Act may be sold without prior court approval by persons authorized to enforce the Act. 15 C.F.R. § 904.505(a).[15] The regulation authorizes immediate sale of the fish in order to prevent its spoilage and deterioration in value. The proceeds are subject to later administrative and judicial proceedings in the same manner as the seized fish would have been. 15 C.F.R. § 904.505(d).

Plaintiffs claim that section 310(d)(2) of the Act, 16 U.S.C. § 1860(d)(2), requires court approval prior to the sale of the fish,[16] and that therefore the regulation in question is not authorized by the Act and is beyond the Secretary's regulatory jurisdiction. The Government defends by stating that the Plaintiffs' challenge to the validity of the regulation is time-barred by Section 305(d) of the Act, 16 U.S.C. § 1855(d),[17] and in the alternative, that the regulations are consistent with the Act.

■ It is clear that the thirty-day time limitation in § 1855(d) applies to direct challenges of implemented regulations. *National Food Processors Ass'n. v. Klutznick*, 507 F.Supp. 76 (D.D.C.1981), *aff'd* C. No. 81–1239 (D.C.Cir. June 30, 1981); *Hanson v. Klutznik*, 506 F.Supp. 582 (D.Alaska 1981). There is some question, however, whether the time limitation should apply to collateral attacks on regulations in an enforcement proceeding such as this. At least one court has held that the Act does not preclude such collateral attacks. *United States v. Seafoam II*, 528 F.Supp. 1133, 1138–39 (D.Alaska 1982).[18] Absent any express wording in § 1855(d) that could be interpreted as an absolute bar to collateral attacks on regulations in an enforcement proceeding, this Court finds that it has jurisdiction to hear Plaintiffs' challenge. *Compare* Federal Water Pollution Control Act, 33 U.S.C. § 1369(b)(2) (1976); Clean Air Act, 42 U.S.C. § 7607(b)(2) (Supp. III 1979).

Plaintiffs argue that the express wording of section 310(d)(2) requires prior court approval for the sale of fish seized pursuant to the Act. Section 310(d)(2) of the Act,

**15.** Section 905.505(a) reads:

In view of the perishable nature of fish, any person authorized to enforce a statute administered by NOAA may, as authorized by law, sell or cause to be sold, and any person may purchase, for not less than its domestic fair market value, fish seized under such statute.

**16.** Section 1860(d)(2) reads:

Any fish seized pursuant to this Act may be sold, subject to the approval and direction of the appropriate court, for not less than the fair market value thereof. The proceeds of any such sale shall be deposited with such court pending the disposition of the matter involved.

**17.** Section 1855(d) provides for judicial review of regulations promulated under the Act, but

only "if a petition for such review is filed within 30 days after the date on which the regulations are promulgated." The challenged regulation herein, 15 C.F.R. § 904.505, was promulgated in April, 1985 [50 FR 12782, April 1, 1985; 51 FR 1249, Jan. 10, 1986]. Plaintiffs filed their complaint on August 27, 1986, well after the thirty-day period had expired.

**18.** The Government has cited *Ferrara, et al. v. United States*, C.A. No. 78–420 (D.Mass. June 19, 1978), as contrary authority for allowing collateral attack in an enforcement proceeding. The Court has read the bench order in that case and is unable to determine whether that court was denying a motion for a direct or collateral challenge to the regulations. In any event, the court's decision in *Seafoam II* is more recent, and the analysis more comprehensive.

16 U.S.C. § 1860(d)(2), provides that "[a]ny fish seized pursuant to this Act may be sold, *subject to the approval and direction of the appropriate court,* for not less than the fair market value thereof." (emphasis added) Plaintiffs' position is that the phrase "subject to the approval and direction of the appropriate court" requires a court order for the sale of seized catch. The implemented regulation, however, does not require court approval prior to actual sale and allows summary sale of the catch by agents authorized by NOAA. 15 C.F.R. § 904.505(a). The proceeds of the sale are then deposited in a NOAA suspense account and are subject to administrative and judicial proceedings in the same manner as the seized fish would have been. 15 C.F.R. § 904.505(a), (d). The Government argues that these regulations providing for court approval subsequent to sale are consistent with the Act and are a reasonable exercise of the Secretary's authority in order to prevent unnecessary deterioration in the value of seized catch.

█ The Court finds that the regulation authorizing the warrantless seizure of the fair market value of fish seized pursuant to the Magnuson Act is consistent with legislative purpose. Under the Act, authorized agents are given the power to conduct warrantless searches of vessels reasonably believed to be in violation of the Act, and to seize the catch of such vessels without court order. 16 U.S.C. § 1860(b)(1)(A). By amendment in 1983, Congress broadened district court jurisdiction in a civil forfeiture action, providing that a court would have jurisdiction not only over the seized catch, but over the "fair market value thereof." 16 U.S.C. § 1860(a), (b). The House Report states that the phrase "or the fair market value thereof" was added

to allow agents to "seize the fair market value of fish on board a fishing vessel which has been found to have violated the provisions of section 307 of the Act ... the current provision allowing only the seizure of the fish itself is often impossible to accomplish in timely fashion; thus the fish have no real value." H.R.Rep. No. 97–549, 97th Cong., 2d Sess. 32, *reprinted in* 1982 U.S.Code Cong. & Admin.News 4320, 4345. Although this amendment was added to the jurisdictional provision of the Act, its legislative purpose expresses a clear acknowledgment of the inherent difficulties in preserving perishable fish pending judicial proceedings, and it also expresses the intent to allow agents to "seize the fair market value of fish." Since seizure of the fish does not require *prior* court approval under the Act, it was not unreasonable for the Secretary to not require prior court approval for the seizure of the fair market value of the fish.

The reasonableness of the implemented regulations is further supported by the inherently perishable nature of fish and by the fact that it authorizes no more than what the vessel owners would have done themselves, to wit: sell the catch at fair market value. The terms of that sale and the seizure itself is subject to court approval in later enforcement proceedings. The value of the fish is thereby preserved for both parties pending administrative or judicial proceedings. Should a court find that the search and seizure was unreasonable, the owners would be entitled to the fair market value of their catch. Without a provision allowing for quick sale of the catch, the value of the fish would deteriorate while court processes delayed their sale, and ultimately a claimant wrongfully accused could suffer an unnecessary loss.[19]

---

19. The Court finds further support for the reasonableness of the implemented regulation in the Act's provision providing for mandatory forfeiture of the fish (or fair market value thereof). Section 310(a) of the Act, 16 U.S.C. § 1860(a), reads in pertinent part:

> All or part of such vessel may, and all such fish (or the fair market value thereof) shall, be forfeited to the United States pursuant to a civil proceeding under this section.

Similar mandatory forfeiture provisions have been interpreted as transferring the right to the property to the Government at the time of the violation. *See Strong v. United States,* 46 F.2d 257, 261 (1st Cir.1931) (Congress may provide by law on what event the divestiture of the right or title shall take place in forfeiture statutes— whether on commission of the offense, the seizure, or the condemnation). In *United States v. Stowell,* 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890), the Supreme Court wrote:

Plaintiffs argue in the alternative that the manner of enforcement of the regulations does not comport with the customs statutes. Section 310(c) of the Act provides that the provisions of the customs laws relating to the disposition of seized property shall apply "to any case in which forfeiture is alleged to be authorized, under this section, unless such provisions are inconsistent with the purposes, policy and provisions of this chapter." 16 U.S.C. § 1860(c). Plaintiffs claim that the customs statute governing the summary sale of seized items, 19 U.S.C. § 1612, requires a court order prior to the sale of seized merchandise in excess of $10,000. They argue that because the Secretary's regulations did not require a prior court order for the sale of the catch from the F/V Jessica & Lisa, which totaled more than $11,000, those regulations are inconsistent with the customs statutes and, consequently, are inconsistent with section 310(c) of the FCMA, 16 U.S.C. § 1860(c).

■ Plaintiffs' argument is based, however, on a reading on 19 U.S.C. § 1612 that has since been amended by Congress. Whereas § 1612 used to require a court order for sales of seized merchandise in excess of $10,000, it was amended in 1984 [20] and now—by reference to § 1607 of that title—only requires such prior court approval for merchandise whose value exceeds $100,000.[21] Since the value of the catch seized from the F/V Jessica & Lisa was well under $100,000, its sale without prior court approval was not inconsistent with § 1612.[22]

■ Plaintiffs further allege that they were denied the right to post bond as required under the statute. No such substantive right to the release of seized fish (or the fair market value thereof) is conferred by the Act.[23] Section 310(d)(1) of

By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right of the property then vests in the United States although their title is not perfected until judicial condemnation....

*Stowell,* 133 U.S. at 16–17, 10 S.Ct. at 247.

Section 310(e) of the Act, 16 U.S.C. § 1860(e), establishes a rebuttable presumption that "all fish found on board a fishing vessel which is seized in connection with an act prohibited by section 1857 of this title were taken or retained in violation of this chapter." Reading section 310(e) in conjunction with the mandatory forfeiture provision of section 310(a), it was not an unreasonable interpretation of the Act by the Secretary to implement a regulation for the summary sale of seized fish, subject to later judicial confirmation of actual violations.

**20.** Pub.L. 98–473, Title II, § 315, 98 Stat. 2054 (Oct. 12, 1984).

**21.** Before the 1984 amendments, section 1612 read in pertinent part as follows:

Whenever it appears to the appropriate customs officer that any vessel, vehicle, merchandise, or baggage seized under the customs laws is liable to perish or to waste or to be greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof, and the value of such vessel, vehicle, merchandise, or baggage *as determined under § 1606 of this title, does not exceed $10,000,* and such vessel, vehicle, merchandise, or baggage has not been deliv-

ered under bond, such officer shall, proceed forthwith to advertise and sell the same at auction under regulations to be prescribed by the Secretary of the Treasury. (emphasis added)

By amendment in 1984, Congress substituted "is subject to section 1607 of this title" for "as determined under section 1606 of this title, does not exceed $10,000." Merchandise that "does not exceed $100,000" is subject to the post-seizure procedures of section 1607. 19 U.S.C. § 1607.

**22.** Because there is no inconsistency on the facts of this case, the Court need not decide whether the seizure of fish whose value exceeds $100,000, without prior court approval, would violate § 1860(c) of the Act. The Court notes, however, that under § 1860(c), only those customs statutes that are not "inconsistent" with the "purposes, policy and provisions" of that chapter should apply. As discussed more fully above, at least one of the purposes behind that chapter (as amended) was to preserve the value of the catch against unnecessary spoilage due to administrative delay: to delay the sale of larger quantities of fish (in excess of $100,000), and thereby increase the likelihood of spoilage, would seem to be inconsistent with that legislative concern.

**23.** The Court notes that Plaintiffs' complaints appear to claim a property and liberty interest in posting bond. [Complaint ¶¶ 19, 26] The Supreme Court has recently ruled that a "forfeiture proceeding, without more, provides the postseizure hearing required by due process to protect" a claimant's property interest in proper-

the Act, 16 U.S.C. § 1860(d)(1), prescribes the procedure to be followed by officers authorized to serve any process *in rem* that is issued by a court, including the discharge of any seized fish upon receipt of satisfactory bond. Section 311(d) of the Act, 16 U.S.C. § 1861(d), makes the prescription or acceptance of "satisfactory bonds or other security" discretionary with the Court.[24] By 1986 amendment,[25] Congress made clear that the Secretary's power to issue bond under section 310(d)(1) was discretionary unless by order of the court pursuant to section 311(d):

> Nothing in this paragraph may be construed to require the Secretary, except in the Secretary's discretion or pursuant to the order of a court under Section 311(d), 16 U.S.C. § 1861(d), to release on bond any seized fish or other property or the proceeds of the sale thereof.

In addition, under the relevant regulations, a claimant is granted the opportunity to post bond for seized property, but the release of such property is in "the sole discretion" of the NOAA Administrator. 15 C.F.R. § 904.502.[26] The proceeds of fish sold pursuant to 15 C.F.R. § 904.505 are not subject to bonded release. 15 C.F.R. §§ 904.502, 904.506(f).

The cases cited by Plaintiffs in support of the proposition that the Act confers the right to post bond do not address the issue of whether a claimant may post bond for the fair market value of seized catch. In *United States v. Kaiyo Maru No. 53*, 503 F.Supp. 1075 (D.Alaska 1980), the court determined that the Act did not require that the bond or security posted for the release of a seized vessel be for the full value of that vessel. That conclusion was grounded in the wording of section 310(a), 16 U.S.C. § 1860(a), which creates discretionary power in the district court to determine whether "all or part of" an offending vessel should be subject to forfeiture. No such discretion is created with respect to fish seized pursuant to violations of the act: *all* fish seized must be forfeited where a violation is found. The court's analysis in *Kaiyo Maru* would support the proposition that the only satisfactory bond for property subject to mandatory forfeiture would be the full value of that property. The only adequate bond, therefore, for the fair market value of seized catch would be their full value, which would hardly have placed Plaintiffs in a better position.

Plaintiffs also cite a passage from *United States v. Marunaka Maru No. 88*, 559 F.Supp. 1365 (D.Alaska 1983), in which the court discussed a claimant's right to obtain interim release of a vessel under section 310(d) of the act, 16 U.S.C. § 1860(d). The court stated that a claimant "was permitted by law, once the vessel is seized, to ask the court to return the seized property", and that section 1860(d) provides that such release "shall" be granted "upon the receipt of a satisfactory bond or other security from any person claiming such property." *Id.* at 1369. The court commented that this provision spared the claimant "both the costs associated with custody as well as economic loss caused by detention of a vessel which otherwise could be gainfully utilized." *Id.* The case before this Court is distinguishable in several respects. First, the vessels were not seized and therefore Plaintiffs were not deprived of

---

ty seized pursuant to the customs statutes. *United States v. Von Neumann*, 474 U.S. 242, 106 S.Ct. 610, 615, 88 L.Ed.2d 587 (1986).

**24.** Section 311(d) states in pertinent part that district courts "may, at any time— ... (3) prescribe and accept satisfactory bonds or other security."

**25.** Pub.L. 99–659, Title I, § 109(a), Nov. 14, 1986, 100 Stat. 3714.

**26.** Section 904.502 reads in part:
The Administrator may, in his or her sole discretion, release any seized property upon deposit with the Administrator of the full val-

ue of the property or such lesser amount as the Administrator deems sufficient to protect the interests served by the applicable statute..... The provisions of § 904.506(f) of this Subpart apply to the Administrator's determination whether to release the property. Section 904.506(f) reads in pertinent part:
The following, however, will not be released:
....
(iv) proceeds from the sale of seized property sold under § 904.505 of this subpart ... [i.e., seized fish]

their ability to pursue their economic livelihood. Second, the *Marunaka Maru* court was not faced with the issue of whether claimants are entitled under the Magnuson Act to post bond for the fair market value of seized catch. In any event, the immediate sale of seized catch and the deposit of the proceeds in either a NOAA suspense account or with the court achieves the purpose behind section 1860(d); that is, to prevent unnecessary economic loss associated with custody.

### IV.

■ Finally, Plaintiffs claim that their due process rights were violated because 1) they did not receive actual notice of the violations until three months after the seizure, and 2) they were not provided a hearing at a meaningful time. *See Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972).[27] The Court finds initially that Plaintiffs were provided actual notice of the violations at the time of the seizures. Plaintiffs or their agents were present at the time of seizure, were personally informed of the seizure procedure and reasons therefore, and were issued Enforcement Action reports detailing the specific violations. Such personal notice also comports with the requirements of implemented regulation 15 C.F.R. § 904.501. *See also Michelin Tires (Canada) Ltd. v. First Nat'l Bank of Boston*, 666 F.2d 673, 682 (1st Cir.1981).

Plaintiffs' claim that they were denied the opportunity for a hearing, within a meaningful time, is closely related to the issue of notice. Although actual notice of the violations may be imputed to them at the time of the seizures, the record indicates that they did not receive formal notice of their right to a hearing before an administrative law judge until November 9, 1987. For both parties that meant a delay of approximately three months before they could formally request a hearing contesting the accuracy of the Government's allegations of violations.[28] The Court also notes that it was not until that time that the attorney for the NOAA was ready to refer the matter to the United States Attorney for institution of forfeiture proceedings.[29] The Court therefore finds it necessary to inquire into the reasonableness of *two* delays: first, the delay between the seizure and the mailing of the notice informing claimants of their right to request a hearing and of the NOAA's intent to initiate civil forfeiture proceedings; and second, the overall delay between seizure and the actual filing of forfeiture actions by the U.S. Attorney.

■ Whether the time lapse between seizure and filing of forfeiture actions rises to the level of due process violation must be determined by weighing four factors: length of delay, the reason for the delay, the defendant's assertion of right to a judicial hearing, and prejudice to the defendant. *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850)*, 461 U.S. 555, 565, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1986) (holding that 18–month delay in filing forfeiture action did not violate due process).[30] In the present case,

---

**27.** It is now well settled that, in certain "extraordinary situations", due process does not require a prior hearing when the government seizes items subject to forfeiture. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

**28.** The Notice of Violation and Assessment of Administrative Penalty was mailed along with enclosures notifying Plaintiffs of their right to request a hearing before an Administrative Law Judge to deny or contest all, or any part, of the violations. Also sent were copies of implemented regulation 15 C.F.R. 904 governing civil procedures.

**29.** By later dated October 9, 1987, the staff attorney for the NOAA informed Plaintiffs' counsel

that "NOAA intends to refer the seizure of a check in the amount of [$11,089.15, F/V Jessica & Lisa] [$5,022, F/V Teresa Marie] in this case to the United States Attorney for institution of forfeiture proceedings.... These forfeiture proceedings are independent of agency penalty proceedings, and run simultaneously with the agency proceedings. You may delay the institution of the judicial forfeiture proceedings until the administrative penalty proceedings are completed...." Plaintiffs chose to delay the institution of civil forfeiture proceedings and signed the appropriate waiver form.

**30.** The Supreme Court in *$8,850* applied the same four-factor balancing test as that used in determining when Government delay abridges

Plaintiffs have not made the required claim or showing that the delay prejudiced their ability to present a defense on the merits. *Id.* at 569, 103 S.Ct. at 2014. They did make some assertion of the right to a judicial hearing by filing suit in this Court in August of 1986, *id.* at 568, 103 S.Ct. at 2014, but they later consented to a delay of the formal forfeiture proceedings pending resolution of administrative civil penalty proceedings. The remaining two factors to be weighed by this Court are, therefore, the length of delay and the reason for delay.

The determination of when a delay becomes improper depends on the facts of the individual case. *Id.* at 565, 103 S.Ct. at 2012. This Court views an eight month delay in the filing of civil forfeiture proceedings as significant. The substantial amount of money in this case would have satisfied a number of claims for seamans' wages, and under the implemented regulations there was no means by which Plaintiffs could have obtained interim release of the proceeds or part thereof. 15 C.R.F. § 904.506(f). Further, it appears that—under the current administrative procedure—court approval for the seizure is not sought until the U.S. Attorney institutes civil forfeiture proceedings. Given these circumstances, the need for a speedy forfeiture hearing—or at least the opportunity to request the institution of such a proceeding—is heightened.

Whether such a delay constitutes a violation of due process depends in large degree on the reasons for delay. *Id.* at 565, 103 S.Ct. at 2012. The Government has offered as justification the fact that there were pending administrative proceedings, and that Plaintiffs had consented to the delay in filing forfeiture proceedings until after the completion of those civil penalty proceedings.[31] Once Plaintiffs reached agreement stipulating to the violations of the Act and waiving any right to administrative hearings, the Government promptly filed forfeiture proceedings in this Court against the owners of the F/V Jessica & Lisa.[32]

The pendency of an administrative petition is a weighty factor in the four-part balancing inquiry, for "[g]iven the great percentage of successful petitions, allowing the Government to wait for action on administrative petitions eliminates unnecessary and burdensome court proceedings." *Id.* at 566, 103 S.Ct. at 2013. Because forfeiture of the proceeds of a seized catch is mandatory once a vessel is found to be fishing in violation of the Act, it was certainly both reasonable and time efficient for the U.S. Attorney to await a final administrative determination of actual violations before instituting forfeiture proceedings in federal court. This is especially so where, as here, claimants expressly consent to that manner of proceeding.

■ This does not fully resolve the issue, however. The Court must still address whether NOAA's three month delay in notifying Plaintiffs of their rights and the administrative procedures under the Act was

---

the right to a speedy trial. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**31.** The record indicates that Plaintiffs formally agreed that on November 5, 1986, Plaintiffs requested an administrative hearing; that on November 10, Plaintiffs consented to a delay in instituting forfeiture proceedings until after a conclusion of those administrative hearings; that on November 12, NOAA sent notification of the request for administrative hearing to the Office of Administrative Law Judge in Washington, D.C.; that the request was acknowledged by letter dated December 10, and an order issued for the submission of pre-hearing reports by both parties by December 31 (F/V Teresa Marie) and January 5 (F/V Jessica & Lisa); that on

or about December 29, 1986, Plaintiffs submitted such reports and requested that the hearing begin in late March, 1987, so that their civil action claiming due process violations could be concluded in this Court; and finally, that by letter dated March 17, 1987, the Administrative Law Judge officially set the hearing for April 6.

**32.** The record indicates that owners of the F/V Jessica & Lisa reached agreement on April 23, 1987, and that forfeiture actions were filed in this Court on April 29, 1987. Owners of the F/V Teresa Marie reached agreement stipulating to violations on April 1, 1987, and forfeiture action was filed in the Massachusetts district court on June 4, 1987. *United States v. The Proceeds of the Sale of 12,140 Pounds of Fish, to wit: $5,022,* Civ. No. 87–1429 Y (D.Mass.1987).

a reasonable delay. It was not until three months after the seizure that Plaintiffs learned of their right to a hearing before an Administrative Law Judge, of their right to pursue such a remedy simultaneously with civil forfeiture proceedings in federal court, and of the alternative of waiving the institution of civil forfeiture proceedings pending the outcome of civil forfeiture proceedings. Only after three months following the warrantless seizure was NOAA prepared to seek court approval of that seizure by referring the check(s) to the U.S. Attorney for institution of civil forfeiture proceedings.

■ Although it is now well-settled that the absence of pre-seizure notice and opportunity for a hearing do not deny due process in certain forfeiture cases, *Calero–Toledo*, 416 U.S. at 679–80, 94 S.Ct. at 2089–90, "once seizure is accomplished, the justification for postponement enumerated in *Calero–Toledo* evaporate, . . . and due process requires that notice and opportunity for some form of hearing be accorded swiftly, and, in any event, prior to forfeiture." *Wiren v. Eide*, 542 F.2d 757, 761 n. 6 (9th Cir.1976) (citing *Calero–Toledo*, 416 U.S. at 679–80, 94 S.Ct. at 2089–90); *see also Vance v. United States*, 676 F.2d 183, 186 n. 5 (5th Cir.1982). In oral argument, the Government could offer no justification for the three month delay other than that the organization and routing of administrative papers necessarily takes some time. This is not an adequate justification for a three-month delay where thousands of dollars have been confiscated—without a warrant—and where notice of rights and administrative procedures is given by form letter.

Plaintiffs should not have to wait indefinitely while the NOAA processes the necessary administrative papers, nor should such administrative delay be used as justification to completely toll the filing of civil forfeiture proceedings. The Supreme Court addressed the general issue of ad-ministrative delay in *United States v. $8,850:*

> The Government takes the extreme position, however, that a pending administrative petition should completely toll the requirement of filing a judicial proceeding. Nothing in the statutory scheme or in our cases supports this argument. A claimant need not waive his right to a prompt judicial hearing simply because he seeks the additional remedy of an administrative petition for mitigation. Unreasonable delay in processing the administrative petition cannot justify prolonged seizure of his property without a judicial hearing. Rather, the pendency of an administrative petition is simply a weighty factor in the flexible balancing inquiry.

461 U.S. at 566–67, 103 S.Ct. at 2013–14.

■ Although the Government has not taken the "extreme position" addressed by the Supreme Court in *United States v. $8,850*, the three month administrative delay in the present case nevertheless prolonged seizure of Plaintiffs' property without a judicial hearing. Plaintiffs' subsequent agreement to delay institution of civil forfeiture proceedings does not retroactively excuse the initial three month delay. The Court finds the existence of such unexcused delay to be an extremely weighty factor in the four-part balancing inquiry.

Weighing all the factors, however, the Court cannot say that there was a denial of due process of law in this case. The length of delay is the "over-arching factor" in the balancing inquiry, and the Court cannot say that the total eight month period of delay—absent some showing by Plaintiff that the delay prejudiced their ability to prepare a defense on the merits—is of constitutional magnitude.

The Court notes, however, that had Plaintiffs presented any evidence of prejudice, the outcome would likely be quite different.[33] A three month delay *in noti-*

33. In oral argument, counsel stated that Plaintiffs were prejudiced by the delay of being deprived of the profits from their catch, but the "primary inquiry" with respect to prejudice "is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *United States v. $8,850*, 461 U.S. at 569, 103 S.Ct. at 2014.

940

*fying Plaintiffs of their rights under the Act,* and of the administrative procedures to be followed, is facially unjustifiable on the facts of this case. A three month delay in the preparation of a case for referral to the U.S. Attorney's office is likewise inexcusable given the fact that—under current NOAA procedure—it is only upon such referral that a court's approval for the warrantless seizure and sale of the fish is sought. In *United States v. $8,850,* a case upon which the Government relies heavily, the Government informed the claimant *within eight days of the warrantless seizure* that her property was subject to forfeiture and that she had a right to petition for remission or mitigation. 461 U.S. at 558.

Here a government agency acts to seize property of significant value from private citizens in a fashion that is free of traditional, prior due process restraints *only* because Congress has required that its actions ultimately receive the approval of this Court in a civil forfeiture proceeding. It thus acts in such situations in the shadow of the *aegis* of this Court. It will behoove the agency in the future in this district to show by its conduct in expeditiously pursuing such matters, a more refined appreciation of the value and purposes of the due process dispensation which Congress has made available to it. That dispensation is intended to redound to the public interest in the full and fair enforcement of the law without any unnecessary delay. It is to be properly taken as a warrant to move the ball quickly over the goal line—not to hide it in the huddle. The Government is forewarned that, in this district, similar delays will not be looked upon favorably in the future.

\*   \*   \*   \*   \*   \*

The Court having decided the merits of the case on the basis of the stipulated record, judgment is hereby ENTERED for the Government, and it is hereby ORDERED that the check in the sum of $11,-089.15, representing the proceeds from the sale of the 30,840 pounds of fish from the F/V Jessica & Lisa, shall be, and hereby is, forfeited to the Government.