SOUTHERN OREGON PRODUCTION CREDIT ASSOCIATION, Plaintiff,

v.

The OIL SCREW SWEET PEA, Official Number 537674, her rigging, tackle, apparel, furniture, engines, nets and fishing gear, and all other necessaries thereto appertaining and belonging, in rem, and Glenn R. Dexter, Inc., in personam, Defendants,

Port Welding & Machine Works, Inc., a corporation, Plaintiff in Intervention,

Star-Kist Foods, Inc., Plaintiff in Intervention.

Civ. No. 76-224.

United States District Court, D. Oregon.

Feb. 3, 1977.

Sydney L. Chandler, of Chandler, Walberg & Whitty, Coos Bay, Or., for plaintiff.

Kenneth E. Roberts, Sr., W. A. Jerry North, of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., for Port Welding & Machine Works, Inc.

John R. Brooke, of Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for Star-Kist Foods, Inc.

## OPINION

SKOPIL, Chief Judge:

This action in admiralty was filed by Southern Oregon Production Credit Association (the Association) in rem against a fishing vessel, the Oil Screw SWEET PEA, and in personam against the vessel's owner, Glenn R. Dexter, Inc., to foreclose a preferred ship mortgage. An order of default has been entered against both defendants, and the SWEET PEA has been sold to the Association by judicial sale. The sole remaining issue is the relative priority of the Association and two intervening plain-

tiffs—Star-Kist Foods, Inc. (Star-Kist) and Port Welding & Machine Works, Inc. (Port Welding)—in the sale proceeds. For reasons set forth below, the actual controversy is between the Association and Port Welding.

## FACTS

The parties agreed that the priority issue could be determined on stipulated facts. Following oral argument, counsel for the Association and for Port Welding entered into a stipulation that certain facts, including facts alleged in the pleadings, could be considered as evidence. I have also considered the four exhibits introduced by Port Welding during oral argument, as well as documents in the file reflecting the history of this litigation.

*The claims of the Association and Star-Kist*

The Association obtained a preferred ship mortgage[1] against the SWEET PEA on February 23, 1974, pursuant to the Ship Mortgage Act of 1920, 46 U.S.C. §§ 911 *et seq.* The mortgage was given to secure a promissory note of February 1, 1974, in the amount of $130,340.00 plus interest at 9.5% per annum.

Star-Kist had previously obtained a preferred ship mortgage[2] against the SWEET PEA on July 12, 1973. This mortgage was given to secure a promissory note of the same date in the amount of $31,225.00 plus 9.5% interest. Star-Kist had also advanced the total sum of $30,800.92 for services, supplies, and repairs for the SWEET PEA between January, 1973, and February, 1974, giving rise to a maritime lien against the vessel.

By virtue of a Subordination Agreement[3] executed on February 22, 1974, Star-Kist subordinated its preferred mortgage to that of the Association. Star-Kist concedes that its claim to the sale proceeds is subsequent to the Association's but contends that its claim has priority over Port Welding's. Since no proceeds will be available for distribution to Star-Kist in any event (for reasons appearing below), Star-Kist is no longer an active participant in the case.[4]

*The claim of Port Welding*

Port Welding performed certain repairs to the SWEET PEA between December 14, 1972, and March 20, 1973. As a result, a preferred maritime lien in favor of Port Welding against the SWEET PEA arose pursuant to the Federal Maritime Lien Act, 46 U.S.C. §§ 971–975. The parties agree that, had it not been for the suit described in the following paragraphs, Port Welding's preferred maritime lien against the SWEET PEA would have had priority over the preferred mortgages of plaintiff and Star-Kist.[5]

On or about July 20, 1973, Port Welding filed an action in rem against the SWEET PEA and in personam against Glenn Dexter (actually Glenn R. Dexter, Inc.) in the United States District Court for the Southern District of California seeking recovery in the amount of $12,913.41 for the repairs it had performed. As a result of this action, the SWEET PEA was seized under a warrant of arrest. Defendants filed a counterclaim[6] in the total amount of $43,500.00, claiming losses resulting from defective and negligent repairs by Port Welding. Glenn Dexter also filed a declaration[7] stating that he was unable to secure a bond in the amount of $25,000.00 in order to have the

---

1. Exhibit A to plaintiff's complaint.

2. Exhibit A to Star-Kist's complaint in intervention.

3. Exhibit B to plaintiff's complaint.

4. On June 22, 1976, the Clerk of the Court signed a stipulated judgment in favor of Star-Kist and against Glenn R. Dexter, Inc. in the amount of $30,800.92 plus interest at the rate of 6% per annum until paid. Entry of the stipulated judgment awaits the determination of the remaining issue.

5. The Ship Mortgage Act of 1920, 46 U.S.C. § 953, provides that a preferred mortgage lien "shall have priority over all claims against the vessel, except (1) preferred maritime liens . . .", which are defined as "lien[s] arising prior in time to the recording and indorsement of a preferred mortgage".

6. Plaintiff-Intervenor's Exhibit 3, received during oral argument.

7. Plaintiff-Intervenor's Exhibit 2, received during oral argument.

SWEET PEA and another vessel released, that he would suffer irreparable harm if the vessels could not be used during the approaching fishing season, that he had a valid counterclaim against Port Welding, and that he would be willing to supply to the court $10,000.00 in cash and his documents of ownership to the vessels if they could be released.

Subsequently the parties did agree by stipulation [8] to the release of the SWEET PEA on the condition that $5,000.00 security be paid to the court and "all documentation of ownership of the SWEET PEA" be submitted to the court and its control. Pursuant to this agreement the sum of $5,000.00 was paid into court, and the SWEET PEA was released from custody.[9]

On April 6, 1976, a stipulated judgment [10] was rendered in the California case in favor of Port Welding in the amount of $29,-000.00, of which $4,000.00 was paid out of the security deposited with the court. Port Welding contends that its remaining claim in the amount of $25,000.00 has priority over the claims of the Association and Star-Kist.

*History of this action*

The Association filed this action on March 8, 1976. On March 10, 1976, the SWEET PEA was seized by the United States Marshal at Charleston Boat Basin, Charleston, Oregon, pursuant to a warrant of arrest. Subsequently, both Star-Kist and Port Welding filed complaints in intervention asserting claims against the vessel.

On May 11, 1976, an order of default was entered against both defendants and against all possible claimants except Star-Kist and Port Welding. On the same date the SWEET PEA was ordered to be sold and the proceeds deposited in the registry of the court.

■ The SWEET PEA was sold on June 4, 1976, to the Association for the amount of its outstanding mortgage ($130,340.00) plus accrued interest at 9.5% per annum ($29,367.41) plus insurance costs incurred ($6,162.79), for a total of $165,870.20, or the amount of the Association's judgment to be entered in this case, whichever amount is higher.[11] The sale was confirmed by order

---

**8.** Plaintiff-Intervenor's Exhibit 1, received during oral argument.

**9.** A document submitted by Port Welding at oral argument (Plaintiff-Intervenor's Exhibit 4), signed by defendants' attorney on September 6, 1973, states that defendants furnished therewith the sum of $5,000.00 and "documentation of ownership of the SWEET PEA". The record contains no evidence, however, which would indicate that the original documents of ownership of the SWEET PEA were in fact submitted to the court. To the contrary, they could not have been, since the original documents must have been aboard the vessel in order for it to sail and in order for Star-Kist and the Association to obtain their preferred mortgages. Counsel for Port Welding does not seriously contend otherwise.

**10.** Supplemental Exhibit AA to Port Welding's complaint in intervention. The stipulated judgment provided as follows:
"1. That the plaintiff, PORT WELDING & MACHINE WORKS, INC., have judgment [*sic*] against defendant in the amount of $29,000.00 in the captioned matter, filed in July of 1973, for recovery for repairs made to the vessel SWEET PEA performed by plain-

tiff between December 14, 1972 and March 20, 1973. That of this sum $4,000.00 shall be paid from the Court's Registry out of security presently being held for plaintiff's action in the above-entitled and numbered action. The residue of funds remaining in said registry with regard to the captioned matter shall be discharged and returned to that party who paid it into the registry.
"2. That PORT WELDING & MACHINE WORKS, INC., shall be made, by the defendant, GLEN DEXTER, INC., an additionally assured and additional loss payee on all and any hull insurance presently maintained on said vessel, such additional coverage to be at the expense of the defendant, GLEN DEXTER, INC.
"3. GLEN DEXTER, INC., shall allow no lien to attach to said vessel and shall hold the plaintiff, PORT WELDING & MACHINE WORKS, INC., harmless for any and all liens attaching to said vessel from March 23, 1976."

**11.** Since the sale proceeds are equal to the amount of the Association's claim against the SWEET PEA and since the Association concededly has priority as against Star-Kist, there can be no proceeds available to Star-Kist regardless

of the court dated June 29, 1976, and the vessel delivered to the Association free of all liens. The proceeds of sale have not been paid into the registry of the court. Instead, the Association has agreed [12] that in the event the court determines that Port Welding's claim is superior to its own, it will pay to Port Welding an amount not to exceed $25,000.00 plus interest at 6% per annum from April 6, 1976.

## DISCUSSION

■ As noted above, the parties agree that Port Welding's preferred maritime lien against the SWEET PEA would have given it priority in the sale proceeds had it not been for the release of the vessel and the judgment obtained in the California litigation. The question is what effect the release and the judgment had upon Port Welding's rights.

The Association argues that the release of the SWEET PEA after it had been seized in California under warrant of arrest operated to discharge forever Port Welding's lien upon the vessel and thereafter to limit its recovery to the fund deposited in court and an in personam judgment against the owner for any deficiency. Port Welding replies that this conclusion is wrong for two reasons. First, the release of the SWEET PEA did not operate to discharge Port Welding's lien because the parties to the California litigation did not intend for their actions to have any such effect. Second, the judgment ultimately rendered in the California case was a judgment in rem, as well as in personam, and served not to extinguish but to establish the existence of Port Welding's preferred maritime lien, which is entitled under the provisions of the Ship Mortgage Act of 1920 to priority as against the other claimants.

■ General admiralty law clearly favors the Association. Supplemental Rule E(5) and 28 U.S.C. § 2464 provide for the release of a vessel upon bond or stipulation

of value. The prevailing case law on the effect of such a release is well summarized in G. Gilmore & C. Black, *The Law of Admiralty* § 9–89, at 798–800 (2d ed. 1975) [*Gilmore & Black*]:

"The release of a ship under a special bond or stipulation has no effect on any liens except those represented by the libel (or libels) under which process had issued at the time when the release was effected. The decree in an *in rem* proceeding in which the ship has been released executes only those liens which were made the basis of the release bond. Following release, therefore, the ship may still be libeled *in rem* by lienors whose liens arose simultaneously with or before the liens from whose libels the ship was released.

"*With respect to a lien in suit the effect of release is to transfer the lien from the ship to the fund represented by the bond or stipulation. The lien against the ship is discharged for all purposes* and the ship cannot again be libeled *in rem* for the same claim. In the course of a noteworthy discussion of the subject in The New England [*The New England (J.K. Welding Co. v. Gotham Marine Corporation),* 47 F.2d 332, 335 (S.D.N.Y.1931)], Judge Woolsey analyzed the effect of a release in the following terms:

'The stipulation for value here given has taken the place of the New England for all the purposes of this libel. She cannot be rearrested for the cause of action therein stated. . . .

'*The stipulation for value is a complete substitute for the res,* and the stipulation for value alone is sufficient to give jurisdiction to a court because its legal effect is the same as the presence of the *res* in the court's custody.

. . .

'A stipulation for value is like any other contract. It is based on a consideration, the release of an arrested ves-

---

of the court's decision on the priority issue. It is for this reason that Star-Kist has not assumed an active role in this stage of the litigation.

12. The agreement is confirmed by a letter dated June 24, 1976, which is attached to and incorporated in the order of June 29, 1976, as Exhibit A.

sel or the undertaking not to arrest a vessel against which a claim *in rem* is pending. It means to the shipowner the freedom of his ship and to the libellant a new security of unfluctuating value in the place of the vessel.

'A stipulation for value cannot, therefore, be lightly set aside. Fraud, which is not here involved, is, of course, a reason for so doing, but a unilateral mistake such as a statement of libellant's claim at too small a figure is not such a reason.'" (footnotes omitted) (emphasis added)

See also 2 *Benedict on Admiralty* § 63 (7th ed. 1975) [*Benedict*]. Following release of the vessel, the party whose lien has been discharged can no longer recover on the claim asserted in that action a judgment in rem against the vessel. His remedy is limited to recovery in the amount of the bond or stipulation and to a judgment in personam against the vessel owner for any deficiency. *Gilmore & Black* § 9–90, at 801–802. See *Partenreederei Wallschiff v. The Pioneer*, 120 F.Supp. 525, 530 (E.D.Mich. 1954). If these principles apply to the California action, the release of the SWEET PEA forever discharged Port Welding's lien upon the vessel, and Port Welding cannot now assert priority on the basis of that lien.

Port Welding argues, however, that the special circumstances of the California case require a contrary result. I find no substance in either argument advanced in support of its position.

 The discharge of a lien upon release of a vessel occurs by operation of law. It is not dependent upon the intent of the parties to the action. Thus, the court noted in *The New England* (as quoted in the above passage from *Gilmore & Black*) that

a release is effective even though the libellant has made a unilateral mistake in understating the amount of his claim, resulting in an insufficient bond or stipulation. Likewise, in *The Fairisle (Dean v. Waterman S. S. Corporation)*, 76 F.Supp. 27, 31–34 (D.Md.1947), aff'd, 171 F.2d 408 (4th Cir. 1948), cert. denied, 337 U.S. 924, 69 S.Ct. 1171, 93 L.Ed. 1732 (1949) (discussed in *Gilmore & Black* § 9–90, at 802–803), the libellants were limited to a judgment in personam for the deficiency where the judge had set too low a bond after the parties were unable to agree on the amount. In the California action the amount of security was set not by the judge but by the parties themselves. Port Welding cannot repudiate its consent to the release merely because the adverse consequences have now become apparent.[13]

 Port Welding is also wrong about the effect of the California judgment. That judgment was not a judgment in rem against the SWEET PEA. A judgment in rem by its very nature binds not only the parties who appear in court but all who have any interest in the vessel. The judicial sale of the vessel executes all liens and conveys to the purchaser an unencumbered title, with lienholders being limited to recovery from the sale proceeds. *Gilmore & Black* § 9–85, at 786–788; 2 *Benedict* § 22, at 2–9 to 2–11. Nothing in the language of the California judgment,[14] however, purports to affect the vessel or the rights of any lienor except Port Welding. Moreover, the SWEET PEA was no longer present in the Southern District of California when the judgment was rendered. The award of judgment in the amount of $29,000.00 "against *defendant*" (obviously the vessel owner) can only be a judgment in personam.[15] The California judgment does not

---

13. The agreement between Port Welding and the vessel owner that the documents of ownership of the SWEET PEA should be deposited with the California court (see text at notes 8–9, *supra*) might be interpreted as showing an intent not to discharge the lien on the vessel. If such was the parties' intent, however, it was not carried out by deposit of the documents (see note 9, *supra*). The agreement does not affect the outcome of this case.

14. The text of the judgment is set forth in note 10, *supra*.

15. Paragraphs 2 and 3 of the judgment require the vessel owner to make Port Welding an additional loss payee on all vessel insurance and to hold Port Welding harmless for any liens attaching to the vessel in the future. Port Welding points to this language as an indication that the judgment must be in rem. These

serve to give Port Welding priority over the Association.

## CONCLUSION

Port Welding is not entitled to any portion of the proceeds from the sale of the SWEET PEA because it did not hold a maritime lien on the vessel at the time it was sold.[16] The Association shall have judgment in personam and in rem in the amount of $165,870.20, the judgment to be satisfied in full out of the sale proceeds.

Counsel for the Association shall submit to the court within fifteen days a proposed form of judgment with respect to the claims of Port Welding and the Association. Upon entry of a judgment on their claims, the Clerk is directed to enter the stipulated judgment previously entered into between Star-Kist and Glenn R. Dexter, Inc.[17]

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

provisions, however, are more logically viewed as a recognition of the fact that Port Welding might seek to satisfy its in personam judgment by attachment and sale of the vessel, as one of the judgment debtor's assets, by ordinary process. See *Gilmore & Black* § 9–2, at 589, and § 9–90, at 801–802.

16. Even if it could be argued that Port Welding's intervention is an attempt to execute on its in personam judgment, it would not be entitled to any portion of the proceeds. The proceeds are sufficient to satisfy only the Association's claim, which has priority.

17. See note 4, *supra*.