59 F.3d 879
 1995 A.M.C. 2688, 95 Cal. Daily Op. Serv. 5146,
95 Daily Journal D.A.R. 8839
 STEVEDORING SERVICES OF AMERICA, a Washington corporation,
Plaintiff-Appellant,
v.
ANCORA TRANSPORT, N.V.; Armilla International, N.V.;
Armilla International (London), Ltd., and Armilla
International (Houston), Inc., foreign corporations, each
d/b/a itself or one of the above-named defendants,
Defendants-Appellees.
 Nos. 87-4129, 87-4195.
 United States Court of Appeals,
Ninth Circuit.
 July 5, 1995.
 
 Gordon T. Carey, Jr., Portland, OR, for plaintiff-appellant.
 Paul N. Wonacott, Wood, Tatum, Mosser, Brooke & Landis, Portland, OR, for defendants-appellees.
 Before FERGUSON, BRUNETTI, and O'SCANNLAIN, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 Stevedoring Services of America (SSA) appealed from an order vacating a writ garnishing funds allegedly held by one of its debtors. We dismissed SSA's appeal in the belief that we lost jurisdiction of the appeal when the district court relinquished control over the funds, the basis for jurisdiction of SSA's admiralty action. 941 F.2d 1378 (9th Cir.1991). The Supreme Court vacated our opinion and remanded the case for further consideration in light of Republic National Bank of Miami v. United States, 506 U.S. ----, 113 S.Ct. 554, 121 L.Ed.2d 474 (1993). 506 U.S. ----, 113 S.Ct. 955, 122 L.Ed.2d 113 (1993). Having considered the case in light of Republic National Bank, we conclude we have jurisdiction and affirm the district court's order releasing the funds.
 
 I. Facts and Proceedings
 
 2
 The writ of garnishment in question arose out of a maritime contract dispute between Stevedoring Services ("SSA") and Ancora Transport, N.V., a Netherlands Antilles corporation which chartered the M/V RISAN ("Ancora"), Armilla (Rotterdam), Ancora's agent, Armilla (London), the owner of the garnished funds, and Armilla (Houston), the company which SSA alleges to have been Ancora's U.S. agent. SSA had a stevedoring contract to unload cargo from the vessel M/V RISAN in San Diego from October 30 to November 4, 1986. An outstanding balance of $ 59,502.99 remains in dispute on this contract.
 
 
 3
 SSA sued Ancora and all three Armilla corporations for the balance of the money due on the contract in the United States District Court for the District of Oregon. SSA asserted that the district court had jurisdiction vis-a-vis a res in Oregon, funds deposited by Armilla (London) with the Sunrise Shipping Agency ("Sunrise") in Portland. The funds were deposited by Armilla (Rotterdam) on behalf of Armilla (London) to pay for the loading of cargo onto the M/V CONTENDER ARGENT. SSA also alleged that Armilla (London), as an alter ego of Armilla (Rotterdam) and Armilla (Houston), is liable for the balance due on SSA's stevedoring contract with Ancora.
 
 
 4
 On August 7, 1987, the district court ordered the issuance of a writ garnishing the funds deposited with Sunrise and a temporary restraining order pursuant to Rule B(1) of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims. Armilla (London) entered a limited appearance pursuant to Rule E(8) of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims in order to contest the garnishment and to deny SSA's alter ego claim. Armilla (London) contends that Ancora, not Armilla (London), is liable for the balance due on the stevedoring contract. According to Armilla (London), Ancora chartered the M/V RISAN and Armilla (Rotterdam) acted as Ancora's agent. Armilla (London) and Armilla (Houston) claim that they have no connection to SSA.
 
 
 5
 After a hearing, the district court vacated the writ of garnishment and granted Armilla (London)'s motion for the summary release of the funds. SSA moved for the district court to reconsider its decision pending additional discovery or in the alternative moved to stay the execution of the order vacating the writ. SSA posted a stay bond. The district court denied the motion for reconsideration and lifted the stay of the order vacating the writ. SSA then petitioned this court for a stay of the release of funds and for a writ of mandamus; we denied this petition on September 15, 1987. There is no evidence in the record that SSA posted or offered to post a supersedeas bond after its petition to this court for a stay was rejected.
 
 
 6
 After the funds were released, the defendants filed a motion in this court to dismiss the case as moot; we denied this motion, giving them leave to argue this issue in this appeal. We issued an opinion dismissing the appeal in 1989. Stevedoring Servs. v. Ancora Transport, 884 F.2d 1250 (9th Cir.1989), withdrawn, 941 F.2d 1378 (1991). In light of the issues raised by SSA upon petition for rehearing, we withdrew our opinion and issued a new opinion. Stevedoring Servs., 941 F.2d at 1378. In 1993, the Supreme Court vacated our 1991 opinion and remanded the case for further consideration in light of the recent Supreme Court decision in Republic National Bank, --- U.S. at ----, 113 S.Ct. at 555. We now consider the appeal as remanded.
 
 
 7
 II. Our jurisdiction to consider SSA's appeal
 
 A. Appealability
 
 8
 We have jurisdiction of this appeal because the district court's order vacating the garnishment is an appealable collateral order. See Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d 627, 630 (9th Cir.1982).
 
 B. Quasi in rem jurisdiction
 
 9
 The district court had subject matter jurisdiction under 28 U.S.C. Sec. 1333. However, Ancora and the Armilla companies argue that the district court has never exercised personal jurisdiction over them and does not now have control over the res, the funds held by Sunrise. If the appellees are correct, we have no jurisdiction of SSA's appeal because the district court could not enforce any judgment we might enter. We consider this issue in light of the Supreme Court's decision in Republic National Bank and its effect on our law.
 
 
 10
 In Republic National Bank, the United States government instituted drug forfeiture proceedings against a house in which the Republic National Bank of Miami asserted an 80% mortgagor's lien interest. The district court conducted a bench trial and entered a judgment denying the bank's claim of interest. After the district court entered judgment, the government transferred the $1.05 million in proceeds from the sale of the house to the United States Treasury Assets Forfeiture Fund. The government then moved for the Eleventh Circuit to dismiss the appeal for want of jurisdiction, on the ground that the district court no longer had jurisdiction over the Treasury-deposited sale proceeds. Republic Nat'l Bank, --- U.S. at ----, 113 S.Ct. at 556-57.
 
 
 11
 After the Eleventh Circuit dismissed the case, United States v. 6960 Miraflores Avenue, 932 F.2d 1433, 1435-36 (11th Cir.1991), the Supreme Court granted certiorari. Applying admiralty principles to this in rem proceeding as required by 28 U.S.C. Sec. 2461(b), the Court reversed the Eleventh Circuit's judgment of dismissal and announced the following jurisdictional principle: While a district court needs jurisdiction over a res to initiate an in rem action, it does not need to maintain continuous control of the res to maintain jurisdiction of the action. Republic Nat'l Bank, --- U.S. at ----, 113 S.Ct. at 557.
 
 
 12
 We also note that in Republic National Bank the bank neither obtained a stay of execution of the forfeiture judgment nor posted a supersedeas bond in order to preserve jurisdiction over the sale proceeds during the pendency of its appeal. Republic Nat'l Bank, --- U.S. at ----, 113 S.Ct. at 557. We read this fact and the Court's holding to eliminate any requirement on a party seeking to institute a maritime attachment to obtain a stay or post a supersedeas bond to preserve the district court's jurisdiction over the garnished funds while it appealed the release of the garnished funds.
 
 
 13
 The only reason we might hesitate to apply the rule in Republic National Bank to this case is that SSA's garnishment instituted an action for quasi in rem judgment, while the arrest of the house in Republic National Bank instituted an in rem action. We conclude that this difference suggests no reason why we should distinguish the Supreme Court's decision in that case. The Supreme Court justified its decision as a way to end exploitation of the fiction of in rem jurisdiction to defeat the right of a losing party to appeal. In jurisdictions in which release of the res extinguished the district court's jurisdiction, the prevailing party could frustrate the losing party's appeal by transferring the res out of the district court's jurisdiction. The Supreme Court objected in no uncertain terms to this practice: "[T]he fictions of in rem forfeiture were developed primarily to expand the reach of the courts and to furnish remedies for aggrieved parties, not to provide a prevailing party with a means of defeating its adversary's claim for redress." Republic Nat'l Bank, --- U.S. at ----, 113 S.Ct. at 559 (citations omitted).
 
 
 14
 This objection applies with equal persuasiveness to quasi in rem proceedings instituted under Rule B. The attachment procedure provides aggrieved parties an opportunity to gain satisfaction against defendants they might not be able to reach through ordinary in personam proceedings. Polar Shipping Ltd., 680 F.2d at 637; see 2 Thomas J. Schoenbaum, Admiralty & Maritime Law Sec. 21-2, at 471. In this respect, maritime attachment's purpose resembles the purpose of the in rem fiction articulated by the Supreme Court. Maintaining a continuous-control requirement in quasi in rem proceedings would preserve an advantage for prevailing parties eliminated and criticized in the in rem context, the opportunity to shield a district court victory from review.
 
 
 15
 We acknowledge that, in admiralty practice, attachment procedures have come under greater criticism than arrest procedures for the opportunity they offer plaintiffs to gain leverage over foreign defendants. Both maritime procedures have come under criticism for allowing maritime plaintiffs to reach res owners with license far broader than civil procedure allows. 7A James Wm. Moore, Moore's Federal Practice p E.05, at E-205 to E-206 (1993). See generally George Rutherglen, The Contemporary Justification for Maritime Arrest and Attachment, 30 Wm. & Mary L.Rev. 541 (1989). However, Rule B attachments have drawn even stronger criticism than Rule C arrests because the res in an attachment proceeding need not have any relation to the lawsuit--it is merely a means to extract relief in the lawsuit. See Rule B(1); Joseph Kalo, The Meaning of Contact and Minimum National Contacts, 59 Tul.L.Rev. 24, 30 (1984); Rutherglen, 30 Wm. & Mary L.Rev. at 561.
 
 
 16
 However, this criticism of Rule B does not affect our conclusion. The criticism focuses on the opportunity Rule B creates for a plaintiff to harass a garnishee by instituting the attachment. The problem before us focuses on the opportunity the continuous-control requirement creates for the prevailing party, after the merits of the attachment proceeding have been decided, to deprive the losing party of the chance to appeal. We are concerned here with abuse of the release, not of the initial attachment.
 
 
 17
 We conclude that the district court's release of the garnished funds in SSA's action for quasi in rem judgment did not divest the court of jurisdiction over the res. Accord 2 Schoenbaum, Sec. 21-2, at 470 & n. 11 (citing Republic Nat'l Bank ). Because the district court retains jurisdiction, we may review SSA's appeal without concern that we are reviewing an action with defendants now out of the district court's control.
 
 
 18
 III. SSA's appeal from the district court's order
 
 
 19
 Having determined that we have jurisdiction to review the district court's order vacating the writ of garnishment, we consider whether the court erred in concluding that the garnished funds did not belong to a debtor of SSA. We review the court's legal conclusions de novo and its findings of fact for clear error. Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 990 (9th Cir.1994).
 
 
 20
 Armilla (London) introduced evidence that Ancora was the only party to the stevedoring contract with SSA and that Armilla (London), not Ancora, owned the funds in question. SSA offered little more than bare assertions that Armilla (London) was an alter ego of Ancora. The district court correctly concluded that the only proper defendant against SSA's action was Ancora and that Armilla (London) was liable neither on the face of SSA's contract nor as Ancora's alter ego. There was no error in the court's determination that it did not have jurisdiction over the funds under Rule B because Ancora, the actual defendant, did not own them. We thus affirm the district court's release of the garnished funds.
 
 
 21
 AFFIRMED.