# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VENTURA PACKERS, INC., a
California corporation,
          *Plaintiff-Appellant,*

ROGER L. INGMAN; JODY K.
INGMAN; ROSE LEE LLC; DENNIS H.
EAMES; ANDREA J. EAMES,
          *Claimants-Appellees,*

v.

F/V JEANINE KATHLEEN, Official
No. 972086, her tackle, furniture
& apparel in rem; F/V ROSE LEE,
Official No. 942678, her tackle,
furniture & apparel in rem; F/V
TALIA, Official No. 973296, her
tackle, furniture & apparel in rem,
          *Defendants.*

No. 03-56547

D.C. No.
CV-98-09916-SJO

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
PANEL
REHEARING AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
April 5, 2005—Pasadena, California

Filed August 11, 2005
Amended September 16, 2005

Before: Mary M. Schroeder, Chief Judge, Harry Pregerson
and Stephen S. Trott, Circuit Judges.

Opinion by Judge Pregerson

13331

**COUNSEL**

Denise A. Brogna, Lascher & Lascher, Ventura, California, for the plaintiff-appellant.

Carolyn J. Shields, Bailey & Partners, Altadena, California, for the claimants-defendants-appellees.

## ORDER

The opinion, filed August 11, 2005, slip op. 10377, and reported at 2005 WL 1906969 (9th Cir. Aug. 11, 2005), is withdrawn and replaced by the amended opinion filed concurrently with this order. With the amended opinion, the panel has voted to deny the petition for panel rehearing.

The petition for panel rehearing is denied.

## OPINION

PREGERSON, Circuit Judge:

Plaintiff Ventura Packers, Inc. ("Ventura Packers") appeals the district court's grant of summary judgment in favor of the owners of three fishing vessels ("the Owners"), F/V Jeanine Kathleen, F/V Rose Lee, and F/V Talia. Ventura Packers brought this *in rem* admiralty action against the three vessels to execute a necessaries lien, and the vessels were arrested pursuant to maritime procedure. The Owners made a restricted appearance in district court and executed a stipulation with Ventura Packers. In the stipulation, the Owners agreed to post security in exchange for the release of the vessels. They further agreed that the security would stand in the place of the vessels as the defendant in the *in rem* action. The district court granted the Owners' motion for summary judgment and dismissed the *in rem* action. Pursuant to the court's order, counsel for Ventura Packers returned the security to the Owners.

We reversed the grant of summary judgment in favor of the Owners and remanded for further proceedings. *See Ventura*

*Packers v. F/V Jeanine Kathleen*, 305 F.3d 913, 924 (9th Cir. 2002). On remand, the Owners again moved for summary judgment. Once again, the district court dismissed the action. This time, the district court determined that *in rem* jurisdiction was lost because there was no *res* against which to enforce an eventual *in rem* judgment. Furthermore, the district court held that it was powerless to order the Owners to reinstate the security.

We have jurisdiction under 28 U.S.C. § 1291, and conclude that the district court never lost *in rem* jurisdiction. We further conclude that the district court has the authority to order the Owners to reinstate the security pursuant to the stipulation. We therefore reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Original District Court Action*

Ventura Packers is a corporation that provides stevedoring services in Ventura, California. In 1996, Ventura Packers entered into an agreement with the Independent Fishermen's Cooperative ("IFC") to provide stevedoring and other services to IFC affiliated vessels. During the 1996-97 squid season, Ventura Packers provided services to three IFC affiliated fishing vessels: the F/V Jeanine Kathleen, the F/V Rose Lee, and the F/V Talia.

Ventura Packers alleged that IFC provided only partial payment for services rendered by Ventura Packers to the three vessels during the 1996-97 squid season. To recover $170,000 of outstanding debt owed by IFC, Ventura Packers filed an *in rem* admiralty action in district court against the three fishing vessels. *See Ventura Packers*, 305 F.3d at 916. Ventura Packers sought to execute a necessaries lien under the provisions of the Maritime Lien Act, 46 U.S.C. § 31342,[1] by arresting the

---

[1]"The Maritime Lien Act provides that a person (1) providing necessaries (2) to a vessel (3) on the order of the owner or a person authorized

three vessels pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule C"). *See id*. The Owners of the vessels made a restricted appearance under Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule E(8)"). The Owners and Ventura Packers then stipulated to the transfer of cash and a surety bond (also known as "undertakings") to the client trust fund of Bright & Powell, counsel for Ventura Packers, in exchange for release of the vessels.

The stipulation for the release of the F/V Jeanine Kathleen provided in pertinent part that:

> [Ventura Packers] and the JEANINE KATHLEEN hereby agree that the above referenced $47,000.00 cash deposit, if made in lieu of a surety bond, or the surety bond issued in accordance herewith, shall constitute an undertaking in lieu of the further arrest of the JEANINE KATHLEEN within the meaning of Local Admiralty Rule C.1 and further agree that said undertaking shall become a defendant in place of said vessel and shall be deemed referred to under the name of said vessel in any pleading, order or judgment in the [action].

The stipulation further provided in part that:

> the cash deposit undertaking, or any obligations under any surety bond issued in accordance herewith, shall not be released or enforced by the law firm of Bright & Powell except upon the written

by the owner has a necessaries lien on the vessel and may bring a civil action in rem to enforce that lien." *Ventura Packers*, 305 F.3d at 922. "The term 'necessaries' includes most goods or services that are useful to the vessel and keep her out of danger," and "indubitably include[s] the things a prudent owner would provide to enable a ship to perform her particular function." *Id*. at 923.

> instructions of both [Ventura Packers] and the JEA-
> NINE KATHLEEN, or upon further order of the
> court, or, upon presentation of a copy of the final
> judgment, to the prevailing party herein to the extent
> of the amount of said judgment, provided that the
> time to appeal said judgment has expired or to the
> extent of the amount of the judgment affirmed on
> appeal once no further appeal is possible.

The stipulations for the release of the F/V Rose Lee and the F/V Talia were identical in all material respects, except for the amount of the security posted.

After the Owners answered and the parties conducted discovery, the parties cross-moved for summary judgment. *See Ventura Packers*, 305 F.3d at 916. The Owners argued that the district court lacked subject matter jurisdiction, while Ventura Packers argued that jurisdiction was proper. *See id.* On July 26, 2000, the district court granted the Owners' motion and dismissed the action for lack of subject matter jurisdiction. *See id.* The district court found that it lacked admiralty jurisdiction because the contract between Ventura Packers and the IFC was "not wholly maritime." *See id.* at 917. The district court also issued an order releasing the security.

Ventura Packers filed its notice of appeal on August 18, 2000.

B. *Ventura Packers' Return of the Security*

Two days before it filed its notice of appeal, Ventura Packers retained new counsel, Denise Brogna of the law firm Lascher & Lascher, and terminated its former counsel, Michael Damen of the law firm Bright & Powell. On the same day, its former counsel, Michael Damen, sent a letter to counsel for the Owners. The letter enclosed two checks, one payable directly to F/V Rose Lee and one payable to the owner of the

F/V Talia. In the letter, Damen explained that he was returning the two checks "[i]n accordance with the 'Judgment of Dismissal, Exoneration of Undertakings, and Release of All Security' signed by [the district court]."[2]

Brogna stated in her affidavit before the district court that she was not consulted by Damen before he returned the security to the Owners. The district court concluded, however, that Damen was authorized to return the security to the Owners on behalf of Ventura Packers. The district court relied on the fact that it had not granted Damen leave to withdraw as counsel of record until six days after he returned the security to the Owners.

Several months later, counsel for the Owners wrote a letter to Damen. In her letter, counsel for the Owners requested the return of the security for the third vessel, the F/V Jeanine Kathleen. Soon after the letter was sent, Robert Bartosh, general counsel for Ventura Boatyard, Inc.,[3] sent the Owners the surety bond for the F/V Jeanine Kathleen. Upon receipt, the Owners returned the surety bond to its issuer.

C. *The First Appeal and Remand Proceedings*

On appeal from the district court's order granting the Owners' motion for summary judgment and dismissing the action

---

[2]The parties dispute whether counsel for the Owners contacted Ventura Packers and requested the return of the security. Counsel for the Owners contended that she did not demand return of the security, and stated at oral argument that she was surprised to receive the return of the security. The district court did not, however, resolve this factual conflict.

[3]Ventura Boatyard, Inc., is a fifty-percent shareholder of Ventura Packers. The district court found that it was unclear how the bond came into the control of Bartosh when it was originally entrusted to the client trust fund account of Bright & Powell, former counsel for Ventura Packers. Though the parties disputed whether Bartosh was authorized to release the bond on behalf of Ventura Packers, the district court concluded that Bartosh was acting on behalf of Ventura Packers when he released the bond.

for lack of subject matter jurisdiction, we reversed and remanded for further proceedings. *See Ventura Packers*, 305 F.3d at 924. We held that a maritime contract was not necessary to create admiralty jurisdiction under the Maritime Lien Act, 46 U.S.C. § 31342. *See id.* at 917. We also concluded that a triable issue of material fact remained as to whether Ventura Packers could demonstrate the requisite elements to execute a necessaries lien under 46 U.S.C. § 31342. *See id.* at 924.

Though the security was returned to the Owners before oral argument in the first appeal, the Owners did not argue that the return of the security affected the district court's continuing jurisdiction over this action.

On remand to the district court, the Owners once again moved for summary judgment contending that the district court lacked jurisdiction over the *in rem* action. This time, however, the Owners' argument concerned the return of the security. The Owners contended that once Ventura Packers released the security, *in rem* jurisdiction was lost because there was nothing against which to enforce an eventual *in rem* judgment. Furthermore, the Owners claimed that the court could not order them to reinstate the security. Ventura Packers opposed the motion and moved the district court to order the Owners to reinstate the security.

The district court agreed with the Owners and dismissed Ventura Packers' *in rem* action. The court concluded that *in rem* jurisdiction was lost once Ventura Packers returned the security to the Owners because there was nothing against which to enforce an *in rem* judgment. The court further held that it was powerless to order the Owners to reinstate the security.

STANDARD OF REVIEW

The district court's decision to dismiss for lack of *in rem* jurisdiction was a legal determination which we review

*de novo. See Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998); *see also United States v. One 1987 Mercedes Benz Roadster 560 SEC*, 2 F.3d 241, 243 (7th Cir. 1993).

## ANALYSIS

A. *The Arrest of the Three Vessels Conferred In Rem Jurisdiction on the District Court*

[1] "Maritime liens arise for the unpaid provision of necessaries, breaches of maritime contracts, unpaid seaman's wages, unpaid cargo freight, preferred ship mortgages, as well as in other circumstances." *Ventura Packers*, 305 F.3d at 919. When a maritime lien arises, it "confers . . . upon its holder such a right in the thing he may subject it to condemnation and sale to satisfy his claim or damages." *The Rock Island Bridge*, 73 U.S. 213, 215 (1867); *see also* G. Gilmore & C. Black, The Law of Admiralty, § 9-1, at 588 (2d ed. 1975) ("The maritime lienor is not a co-owner of the ship. . . . It remains the owner's ship for all purposes — subject to the lienor's right to have it arrested, wherever he can find it, on process issuing from the admiralty court."). This is because "[t]he theoretical basis for the maritime lien rests on the legal fiction that the ship itself caused the loss and may be called into court to make good." *Ventura Packers*, 305 F.3d at 919; *see United States v. Ten Thousand Dollars in U.S. Currency*, 860 F.2d 1511, 1513 (9th Cir. 1988) ("Jurisdiction *in rem* is predicated on the fiction of convenience that an item of property is a person against whom suits can be filed and judgments entered.") (internal quotation marks and citation omitted).

[2] Thus, the holder of a maritime lien has "the right to proceed in rem directly against the vessel" that is the fictional cause of the loss. *Chugach Timber Corp. v. N. Stevedoring & Handling Corp. (In re Chugach Forest Prod., Inc.)*, 23 F.3d 241, 245 (9th Cir. 1994). When suit is brought in federal court

to execute a maritime lien against a vessel, Rule C permits a district court to "issue an order directing the clerk to issue a warrant for the arrest of the vessel . . . that is the subject of the action." Fed. R. Civ. P. C(3) (Supplemental Rules for Certain Admiralty and Maritime Claims). "In the usual course, [*in rem*] jurisdiction is obtained by serving a warrant of arrest pursuant to Supplemental Rule C(3)." *United States v. Marunaka Maru No. 88*, 559 F. Supp. 1365, 1368 (D. Alaska 1983).

In this action, the district court obtained *in rem* jurisdiction when the three fishing vessels were arrested pursuant to maritime process. *See id.* Once the district court issued warrants for the arrest of the three vessels pursuant to Rule C, and the warrants were successfully served, "jurisdiction was complete." *See The Rio Grande*, 90 U.S. 458, 463 (1874).

**[3]** Rather than permit their vessels to remain under arrest, however, the Owners posted security in exchange for the release of their vessels. "Admiralty procedures allow an arrested vessel to be released from custody upon the posting of security." *Alyeska Pipeline Serv. Co. v. Vessel Bay Ridge*, 703 F.2d 381, 384 (9th Cir. 1983); *see also* Fed. R. Civ. P. E(5) (Supp. R. for Certain Admiralty and Mar. Claims). When the Owners executed their stipulation agreeing to post security in exchange for the release of their vessels, the "security [was] substituted for the vessel[s] as the res subject to the court's jurisdiction." *Alyeska Pipeline Serv. Co.*, 703 F.2d at 384; *see also Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 38 (1960) (Whittaker, J., dissenting) ("This Court has from an early day consistently held that a bond, given to prevent the arrest or to procure the release of the vessel, is substituted for and stands as the vessel in the custody of the court."). "This exchange mean[t] to the [Owners] the freedom of [their] ship[s] and to [Ventura Packers] a new security of unfluctuating value in the place of the vessel[s]." *See J.K. Welding Co. v. Gotham Marine Corp.*, 47 F.2d 332, 335 (S.D. N.Y. 1931).

**[4]** In effect, Ventura Packers' necessaries lien was transferred from the three fishing vessels to the security posted by the Owners. *See S. Oregon Prod. Credit Assn. v. Oil Screw Sweet Pea*, 435 F. Supp. 454, 458-59 (D. Or. 1977); *see also* G. Gilmore & C. Black, The Law of Admiralty, § 9-89, at 799 (2d ed. 1975) ("With respect to a lien in suit the effect of release is to transfer the lien from the ship to the fund represented by the bond or stipulation.").

B.   *Continuous Control of the Res and In Rem Jurisdiction*

The Owners argue that once Ventura Packers returned the security to the Owners pursuant to the district court's order, and before our decision in *Ventura Packers*, the district court lost *in rem* jurisdiction. They rely in part on *Alyeska Pipeline*, where the plaintiffs brought an *in rem* action against the vessel Bay Ridge and arrested it pursuant to Rule C. *See Alyeska Pipeline Serv. Co.*, 703 F.2d at 383. The vessel was then released in exchange for a stipulation for value posted by the claimants. *Id*. We held that once the district court dismissed the case and ordered the stipulation for value released, *in rem* jurisdiction was lost because there was nothing "upon which the judgment of the court could operate and give relief to the appellant." *Id*. at 384 (citing *Canal Steel Works v. One Drag Line Dredge*, 48 F.2d 212, 213 (5th Cir. 1931)).

**[5]** The holding in *Alyeska Pipeline* that *in rem* jurisdiction was lost once the stipulation for value was released by the district court, and the reasoning on which it was based, was implicitly overruled and rejected by the Supreme Court in *Republic National Bank of Miami v. United States*, 506 U.S. 80 (1992). Therefore, the holding in *Alyeska Pipeline* is no longer binding law in this circuit. *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123 (9th Cir. 2002) (quoting *United States v. Lancellotti*, 761 F.2d 1363, 1366 (9th Cir. 1985)) ("[W]e may overrule prior circuit authority without taking the case en banc when 'an intervening Supreme Court

decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point.' ").

**[6]** Contrary to *Alyeska Pipeline,* the Supreme Court in *Republic National Bank* held that as long as there is a valid seizure of the *res* at the initiation of an *in rem* proceeding, *in rem* jurisdiction is not lost by the removal of the *res* from the district court's control. *See  Republic Nat'l Bank*, 506 U.S. at 84 ("[T]he Government relies on what it describes as a settled admiralty principle: that jurisdiction over an *in rem* forfeiture proceeding depends upon continued control of the *res*. We, however, find no such established rule in our cases."); *see also The Rio Grande*, 90 U.S. at 463 ("We do not understand the law to be that an actual and continuous possession of the *res* is required to sustain the jurisdiction of the court. When the vessel was seized by the order of the court and brought within its control the jurisdiction was complete.").

In *Republic National Bank*, the government instituted an *in rem* civil forfeiture proceeding and prevailed in the district court. *See Republic Nat'l Bank*, 506 U.S. at 83. Thereafter, the proceeds from the *res* were transferred out of the district court's control and into the United States Treasury before an appeal was heard in the Eleventh Circuit. *See id.* The government then moved to dismiss the appeal, arguing that jurisdiction over the *in rem* action was lost as soon as the *res* was transferred out of the district court's control. *See id*. at 84. The Supreme Court rejected the government's argument, and held that the only prerequisite to *in rem* jurisdiction is the valid seizure of the *res* at the initiation of *in rem* proceedings. *See id.* at 87-89.

We applied the holding of *Republic National Bank* in *Stevedoring Services of America v. Ancora Transport, N.V.*, 59 F.3d 879 (9th Cir. 1995), where the plaintiff brought a *quasi in rem*[4] action and attached the defendant's funds pursu-

---

[4]Wright and Miller describe the nature of a *quasi in rem* action as follows:

ant to maritime process. After a hearing, the district court vacated the writ of attachment. *Id.* at 881. On appeal, the defendants argued that the district court's release of the attached funds rendered the case moot. *Id.* Following *Republic National Bank*, we rejected the defendant's argument and held that "the district court's release of the garnished funds in [the plaintiff's] action for *quasi in rem* judgment did not divest the court of jurisdiction over the *res.*" *Id.* at 883. Though *Republic National Bank* was an *in rem* case, not a *quasi in rem* case, we concluded "that this difference suggests no reason why we should distinguish the Supreme Court's decision in [*Republic National Bank*]." *Id.* at 882.

**[7]** In short, *in rem* or *quasi in rem* jurisdiction remains throughout the course of an appeal, as long as jurisdiction was properly obtained at the initiation of the action. *See Republic Nat'l Bank*, 506 U.S. at 87; *Stevedoring Servs. of Am.*, 59 F.3d at 882-83. Otherwise, the "prevailing party could frustrate the losing party's appeal by transferring the *res* out of the district court's jurisdiction," a practice to which "[t]he Supreme Court objected in no uncertain terms" in *Republic National Bank. Id.* at 882. There, the Court explained that "[t]he fic-

---

A quasi in rem action is basically . . . a halfway house between in rem and in personam jurisdiction. The action is not really against the property; rather, the action involves the assertion of a personal claim against the defendant of the type usually advanced in an in personam action and the demand ordinarily is for a money judgment, although in some contexts the objective may be to determine rights in certain property. The basis for transforming the suit from one in personam to an action against the defendant's property is the attachment or garnishment of some or all of the property the defendant may have in the jurisdiction.

Wright & Miller, Federal Practice and Procedure; Civil 3d § 1070, at 286 (2002); *see also Teyseer Cement Co. v. Halla Maritime Corp.*, 794 F.2d 472, 476-77 (9th Cir. 1986) (describing the nature of *quasi in rem* jurisdiction in the maritime context).

tions of *in rem* forfeiture were developed primarily to expand the reach of the courts and to furnish remedies for aggrieved parties, not to provide a prevailing party with a means of defeating its adversary's claim for redress." *Republic Nat'l Bank*, 506 U.S. at 87 (internal citations omitted).

**[8]** In light of *Republic National Bank* and *Stevedoring Services of America*, we conclude that *in rem* jurisdiction was not lost when the security was returned to the Owners pursuant to the district court order releasing the security. Because the release of the security did not divest the district court of jurisdiction, we hold that the district court retained *in rem* jurisdiction on remand from our decision in *Ventura Packers*.

## C.    *The Useless Judgment Rule Does Not Apply*

The Owners argue that even if the district court retains *in rem* jurisdiction, any *in rem* judgment would be a useless judgment. Specifically, the Owners contend that the district court is powerless to order them to reinstate the previously exonerated security.

**[9]** There may be some *in rem* actions where dismissal is warranted "where the release of the property would render the judgment 'useless' because 'the thing could neither be delivered to the libellants, nor restored to the claimants.' " *Republic Nat'l Bank*, 506 U.S. at 85 (quoting *United States v. The Little Charles*, 26 F. Cas. 979, 982 (C.C. Va. 1818) (No. 15,612); *see also id.* at 87 (quoting *United States v. One Lear Jet Aircraft*, 836 F.2d 1571, 1579 (11th Cir. 1988) (Vance, J., dissenting)) ("Of course, if a 'defendant ship stealthily absconds from port and leaves the plaintiff with no *res* from which to collect,' a court might determine that a judgment would be 'useless.' "). The Court's reliance on *The Little Charles* in *Republic National Bank* helps us determine whether the useless judgment rule applies here. We conclude that it does not.

**[10]** In *The Little Charles*, the court explained that an *in rem* judgment against a released vessel would *not* be useless "if, for example . . . the parties have, by consent, substituted other property to abide the fate of the suit." 26 F. Cas. at 982. That is what happened here: the three vessels were released by Ventura Packers in exchange for security that was intended to stand in the place of the vessels.[5] This case is therefore distinguishable from those cases cited by the Owners in which the parties did not agree that a substitute form of security, or a substitute *res*, would abide by the fate of the suit.[6]

---

[5]The district court relied in part on *The Brig Ann*, 13 U.S. (9 Cranch) 289 (1815), for the notion that once a plaintiff voluntarily relinquishes possession of the *res*, the Court is powerless to help for want of jurisdiction. That case, however, is unhelpful here. As the Supreme Court stated in *Republic National Bank*, "[f]airly read, *The Brig Ann* simply restates the rule that the court must have actual or constructive control of the res when an *in rem* forfeiture suit is initiated. If the seizing party abandons the attachment *prior to filing an action*, it, in effect, has renounced its claim" and "unless a new seizure is made, the case may not commence." *Republic Nat'l Bank*, 506 U.S. at 87 (emphasis added).

Accordingly, *The Brig Ann* is not instructive here, where the seizure of the *res* was not abandoned prior to the commencement of the action. Furthermore, we do not equate Ventura Packers' release of the security with abandonment of their seizure. They released the security only after being ordered to do so by the district court. As their appeals in this case demonstrate, they continue vigorously to pursue this *in rem* action.

[6]The Owners direct our attention to two cases that applied the useless judgment rule and dismissed *in rem* claims on appeal. *See United States v. 3262 SW 141 Ave.*, 33 F.3d 1299, 1303-04 (11th Cir. 1994) (applying useless judgment rule where the real property at issue had been sold pursuant to a default judgment and the proceeds disbursed completely to priority claimants); *Newpark Shipbuilding & Repair, Inc. v. M/V Trinton Brute*, 2 F.3d 572, 573 (5th Cir. 1993) (applying useless judgment rule where the court found that "[u]nlike the situation in *Republic [National Bank]*, we cannot trace the res or its proceeds to a particular fund in Newpark's possession"). As discussed above, these cases address distinct factual scenarios which do not inform our decision in this case.

Our decision in *Pride Shipping v. Tafu Lumber Co.*, 898 F.2d 1404 (9th Cir. 1990), also relied on by the Owners, is similarly distinguishable. There, we examined the effect of the district court's release of a vessel's

The Owners rely on several cases, preceding both *Republic National Bank* and *Stevedoring Services of America*, in which we concluded that a court is powerless to order a *res* returned where it has been released by the district court and the plaintiff does not seek a stay of the release order or post a *supersedeas* bond. *See United States v. 66 Pieces of Jade & Gold Jewelry*, 760 F.2d 970, 972-973 (9th Cir. 1985); *Am. Bank of Wage Claims v. Registry of the Dist. Court of Guam*, 431 F.2d 1215, 1218 (9th Cir. 1970).

**[11]** However, in *Stevedoring Services of America*, we held that the decision in *Republic National Bank* "eliminate[d] any requirement on a party seeking to institute a maritime attachment to obtain a stay or post a *supersedeas* bond to preserve the district court's jurisdiction over the garnished funds while it appealed the release of the garnished funds." *Stevedoring Servs. of Am.*, 59 F.3d at 882; *see also J. Lauritzen A/S v. Dashwood Shipping, Ltd.*, 65 F.3d 139, 141-42 (9th Cir. 1995). Though *Stevedoring Services of America* was a *quasi in rem* case, we made clear that our conclusion was derived from *Republic National Bank*, an *in rem* case. *See Stevedoring Servs. of Am.*, 59 F.3d at 882. We therefore see no reason to treat this *in rem* case differently. Thus, under *Stevedoring Services of America*, we hold that the district court retained jurisdiction over the *res* pending the outcome of the first appeal, even though Ventura Packers did not file a stay or post a *supersedeas* bond. *See id.*

**[12]** We further conclude that the district court would be well within its authority to order the Owners to reinstate the security. The Owners, by their stipulation, agreed that the

bunkers that had been attached in order to initiate a *quasi in rem* proceeding. *Id.* at 1405. Because the coal inside the vessel's bunkers had been used up by the time the appeal was heard by this court, we concluded that the security was "clearly beyond the jurisdiction of this court, and can never return, since it has now become energy and residual products of combustion." *Id.* at 1408.

security would "become a defendant in place of said vessel and [would] be deemed referred to under the name of said vessel in any pleading, order or judgment" rendered by the district court. As the stipulation indicated, the "security [was] substituted for the vessel[s] as the res subject to the court's jurisdiction." *See Alyeska Pipeline Serv. Co.*, 703 F.2d at 384. Because this *in rem* action is still pending, the security is still the substitute *res.* The security therefore remains subject to the court's jurisdiction. Thus, while Ventura Packers released the security to the Owners when they were ordered to do so by the district court, the district court retains legal custody of the security and can order the Owners to return it to Ventura Packers.[7] *See The Bolina*, 3 F. Cas. 811, 813 (C.C. Mass. 1812) (No. 1,608), *cited with approval in Republic Nat'l Bank*, 506 U.S. at 86 n.4 ("[W]hen once a vessel is libelled, then she is considered as in the custody of the law, and at the disposal of the court, and monitions [i.e., instructions] may be issued to persons having the actual custody, to obey the injunctions of the court.").

---

[7]In their petition for rehearing, the Owners contend that they are no longer in possession of the same security originally transferred to the trust fund of Bright & Powell pursuant to the parties' stipulation. In this circumstance, however, we conclude that the district court can rely on whatever principles of equitable relief it sees fit to recover from the Owners the equivalent amount of cash, or cash substitute, originally promised in exchange for the release of the vessels. *See Swift & Co. Packers v. Compania Colombiana Del Caribe*, 339 U.S. 684, 691-92 (1950) ("We find no restriction upon admiralty by chancery so unrelenting as to bar the grant of any equitable relief even when that relief is subsidiary to issues wholly within admiralty jurisdiction."); *Key Bank of Wash. v. S. Comfort*, 106 F.3d 1441, 1444 (9th Cir. 1997) ("A district court sitting in admiralty has equitable powers to do substantial justice.") (internal quotation marks and citation omitted); *Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148, 1153 n.6 (5th Cir. 1977) (noting that "admiralty courts are much freer today than they may have been in the past to rely upon equitable principles to solve questions which arise in cases whose core is traditionally maritime"); *see also* Fed. R. Civ. P. E(6) (Supp. R. for Certain Admiralty and Mar. Claims) (providing that, "[w]henever security is taken . . . and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing").

D. *The Owners' Restricted Appearance Under Rule E(8)*

Finally, we also reject the Owners' argument that their restricted appearance under Rule E(8) prevents the district court from requiring them to reinstate the security. Rule E(8) provides:

> Restricted Appearance. An appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, may be expressly restricted to the defense of such claim, and in that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served.

Fed. R. Civ. P. E(8) (Supp. R. for Certain Admiralty and Mar. Claims).

**[13]** Rule E(8) permits a claimant in an *in rem* proceeding to "vigorously defend the merits of the claim against him without converting his restricted appearance into a general appearance." *Teyseer Cement Co. v. Halla Maritime Corp.*, 794 F.2d 472, 478 (9th Cir. 1986) (internal quotation marks and citation omitted). Stated differently, "[o]nce a claimant appears and defends against an *in rem* claim for which process has issued, Rule E(8), when properly invoked, precludes claimant's restricted appearance from being deemed a general appearance on other claims, properly joinable, for which process has not yet issued." *Marunaka Maru No. 88,* 559 F. Supp. at 1370. Gilmore and Black describe the purpose of Rule E(8) as follows:

> According to the Advisory Committee's Note[,] this provision . . . was principally designed to insure that an appearance to defend an action initiated by *in rem* (or *quasi in rem*) process does not automatically subject the defendant to *in personam* jurisdiction with

respect to nonmaritime claims which under the liberal joinder provision of [the] unified rules may be combined with maritime claims in the same action.

G. Gilmore & C. L. Black, The Law of Admiralty § 9-90, at 805 (2d ed. 1975).

**[14]** The only claim before the district court is Ventura Packers' *in rem* claim against the three fishing vessels based on its alleged necessaries lien under 46 U.S.C. § 31342. Our decision does not in any way force the Owners to submit to a claim "for which process has not yet issued." *Marunaka Maru No. 88*, 559 F. Supp. at 1370. Accordingly, Rule E(8) does not prevent the district court from ordering the Owners to reinstate the security originally promised in exchange for release of the vessels.

## CONCLUSION

In sum, we hold that the district court retained *in rem* jurisdiction on remand from our decision in *Ventura Packers* even though Ventura Packers, through its counsel, returned the security to the Owners' counsel pursuant to the district court's order. We also hold that because the parties' agreed that the security would stand in the place of the released vessels, an *in rem* judgment would not be useless. Finally, we hold that the district court has ample authority to order the Owners to reinstate the security, notwithstanding Rule E(8).

Thus, we reverse the grant of summary judgment in favor of the Owners and remand the case for further proceedings.

REVERSED and REMANDED.